**TCI OF NORTH DAKOTA, INC., Appellant,**

**v.**

**SCHRIOCK HOLDING COMPANY, Telecommunications Development Corp., Jerome Schriock, Colleen Patsy Schriock, and Colleen D. Johnson, Individually and as Personal Representative of the Estate of Clayton H. Johnson and as the sole general partner of Johnson Properties, a North Dakota limited partnership, Appellees.**

**No. 92–1997.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1993.

Decided Dec. 14, 1993.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

TCI of North Dakota, Inc. ("TCI") appeals the dismissal of its claims under the Cable Television Consumer Protection and Competition Act ("Cable Act") as well as its several state law claims brought against the owners and manager of Robindale mobile home park and a competing cable television provider. We affirm in part and reverse and remand in part.[1]

## I.

Robindale is a mobile home park located in Minot, North Dakota, managed by the Schriock Holding Company. Jerome Schriock and Colleen Patsy Schriock were, at the time of briefing, in the process of purchasing Robindale by means of a contract for deed and held equitable title to the Robindale park. Johnson Properties and Colleen Johnson (as representative of the estate of Clayton H. Johnson) each own a one-half interest in the legal title to Robindale. For convenience, we refer to the defendant owners and manager of Robindale collectively as "Schriock."

Both TCI and Telecommunications Development Corporation ("TDC") hold non-exclusive franchises to provide cable services in Minot, North Dakota. Until December 5, 1988, TCI or its predecessor had been the sole cable provider for Robindale. On October 27, 1988, Schriock informed TCI that it intended to discontinue TCI's services and that TCI would no longer be permitted to provide cable services to the park. In the meantime, Schriock had negotiated with TDC to provide cable services and had granted TDC permission to use the cable lines that TCI's predecessor had installed and which TCI had used when providing cable services to Robindale.

TCI brought this action against TDC and Schriock asserting a statutory right to provide cable services to Robindale mobile home

Philip Kantor, Miami, FL, argued (Patrick W. Durick and Larry L. Boschee of Bismarck, ND, and Terry S. Bienstock of Miami, FL), on brief, for appellant.

Mark V. Larson of Minot, ND, argued, for appellees.

1. We also grant TDC and Schriock's motion to strike the argumentative portions of TCI's postargument submission filed pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure.

park pursuant to the Cable Act.[2] *See* 47 U.S.C. § 541(a)(2). TCI also raised estoppel, conversion, trespass, and tortious interference claims under North Dakota state law. After a bench trial, the district court found that Schriock had not granted a "dedicated easement" to any utility company sufficient to provide TCI the statutory right to access Robindale pursuant to 47 U.S.C. § 541(a)(2) and that TCI's cable lines had become fixtures of the Robindale property under North Dakota state law. The court dismissed TCI's state claims without comment. The issues on appeal, therefore, are (1) whether TCI has the statutory right to access Robindale mobile home park; and (2) whether the district court erred in dismissing TCI's state law claims.

## II.

### A.

The Cable Act authorizes a cable company to use both "public rights-of-way" and "easements ... dedicated for compatible uses" to install its cable. Section 541(a)(2) of the Cable Act specifically provides:

> (2) Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is [sic] within the area to be served by the cable system and which have been dedicated for compatible uses, except that in using such easements the cable operator shall ensure—
>
> (A) that the safety, functioning, and appearance of the property and the convenience and safety of other persons not be adversely affected by the installation or construction of facilities necessary for a cable system;
>
> (B) that the cost of the installation, construction, operation, or removal of such facilities be borne by the cable operator or subscriber, or a combination of both; and
>
> (C) that the owner of the property be justly compensated by the cable operator for

any damages caused by the installation, construction, operation, or removal of such facilities by the cable operator.

47 U.S.C. § 541(a)(2). TCI does *not* contend that defendants have denied it access to a "public right-of-way." Rather, TCI contends that it has the statutory right to provide cable television services to the tenants of Robindale mobile home park in and/or along the trenches, or "easements," presently used by the various utilities already providing services to Robindale and its tenants. No party argues that the utilities are not "compatible uses." The issue before us, therefore, is whether Schriock has granted any of the utility companies an easement "dedicated" for such compatible uses for purposes of § 541(a)(2) of the Cable Act.

### B.

The Cable Act does not define "dedicated." As a result, we must resolve a disagreement between the parties regarding the meaning of the word "dedicated" as used in the statute. TCI urges that in order for an easement to be "dedicated," the land covered by the easement need simply be "designated" or "set aside" for utility use. According to TCI, such a "set aside" would include both private easements lawfully recorded pursuant to state real estate recording statutes, as well as unrecorded easements granted privately to individual utility providers and used by them to provide utility service. TDC and Schriock, on the other hand, argue a more restrictive definition. They assert, in essence, that we should apply the legal definition of "dedicated" to the statute and thus maintain a distinction between private and, on the other hand, "dedicated," or public, easements. We adopt the latter approach.

A plain reading of § 541(a)(2) mandates application of the legal definition of "dedicated." Congress has chosen the word "dedicated" to describe the type of easement that a cable company may use to access an own-

---

**2.** TCI originally brought suit against the owners of Holiday Village mobile home park, Sera and Henry Linke, as well, seeking access to Holiday Village. Before trial, however, TCI settled with the Linkes and all claims against the Linkes were then dismissed with prejudice. Pursuant to the settlement, the Linkes agreed to permit TCI access to Holiday Village and to relinquish any potential claim that TCI's equipment had become fixtures of the Linkes' land. The only defendants remaining on appeal, therefore, are the owners and manager of Robindale and TDC.

er's private property. Because the word "dedicated" has a fairly specific meaning within the context of real property law, we find TCI's broad definition inappropriate. TCI simply urges a much more expansive definition of the word "dedicated" than a plain reading of the statutory provision suggests. *See Media Gen. Cable v. Sequoyah Condominium,* 991 F.2d 1169, 1173 (4th Cir. 1993) ("dedicated" as used in § 541(a)(2) of the Cable Act is a "term of art"); *Cable Holdings of Georgia v. McNeil Real Estate,* 953 F.2d 600, 606 (11th Cir.) ("Congress's use of the word 'dedicated' at least suggests a reference to the legal meaning of 'dedication.' "), *cert. denied,* —— U.S. ——, 113 S.Ct. 182, 121 L.Ed.2d 127 (1992); *Cable Assoc., Inc. v. Town & Country Management Corp.,* 709 F.Supp. 582 (E.D.Pa.1989) (construes "dedicated" in accordance with its meaning in the context of real property law).

Furthermore, courts are obligated to interpret statutes in such a way as to avoid constitutional infirmities. As the Supreme Court has stated:

[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.... This approach not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that Congress, like this Court, is bound by and swears an oath to uphold the Constitution.

*DeBartolo Corp. v. Florida Gulf Coast Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397–98, 99 L.Ed.2d 645 (1988) (internal citations omitted). If we were to adopt TCI's broad definition of "dedicated," serious questions would arise as to whether § 541(a)(2) violated the Takings Clause of the federal constitution. *See Media Gen.,* 991 F.2d at 1175 (The court "recognize[s] the validity of the fear that a broader reading of section [541(a)(2) ] could raise serious constitutional questions."); *Cable Holdings,* 953 F.2d at 609 ("By limiting the language of Section [541(a)(2) ] to those easements which are dedicated by the developers of residential subdivisions, we eliminate [ ] substantial

Fifth Amendment concerns."); *Cable Inv., Inc. v. Woolley,* 867 F.2d 151, 159–60 (3d Cir.1989) (court construes statute to avoid constitutional concerns about a potential taking without just compensation); *see also Cable Assoc.,* 709 F.Supp. at 585–86. Because the legal definition of "dedicated" is an "acceptable construction of the statute," we avoid any such potential constitutional concerns.

### C.

■ *Black's Law Dictionary* provides the following definition of "dedication":

The appropriation of land, or an easement therein, by the owner for the use of the public, and accepted for such use by or on behalf of the public.... A deliberate appropriation of land by its owner for any general and public uses, reserving to himself no other rights than such as are compatible with the full exercise and enjoyment of the public uses to which the property has been devoted.

*Black's Law Dictionary* 412 (6th ed. 1990). The verb "dedicate" is also defined as follows:

To appropriate and set apart one's private property to some public use; as to make a private way public by acts evincing an intention to do so.

*Id.* From these definitions emerges the requirement that in order to "dedicate" an easement, the grantor must make public his or her intention to appropriate property for a public use and the same must be accepted by or on behalf of the public for such use. "In general, an easement is legally 'dedicated' only when the private property owner entirely relinquishes his rights of exclusion regarding the easement so that the general public may use the property." *Cable Holdings,* 953 F.2d at 606.

■ Minot Telephone Company provides telephone service to Robindale without an easement, and Northern States Power Company provides electrical services pursuant to an unrecorded underground distribution agreement. Neither of these private arrangements "evinc[es] an intention" to appropriate a portion of Robindale mobile home park for general public utility use nor has

either been "accepted for such use by or on behalf of the public." Accordingly, neither the telephone company's provision of telephone services nor the power company's underground distribution agreement qualifies as an "easement . . . dedicated for compatible uses" under the Cable Act. *See Id.* at 610 (Section 541(a)(2) does not authorize access to easements privately granted to particular utility companies). TCI has no statutory authority to piggyback on those buried distribution lines.

■ The parties agree, however, that prior title holders of Robindale granted a private corporation, Montana–Dakota Utilities (the gas company), an easement in 1971 which was publicly recorded. (*See* Plaintiff's Exhibit 7.) The gas easement covers all of "lots 1 through 14 . . . and outlot 10, which generally is the land area used for the Robindale Park." (District Ct. Mem. and Order, Mar. 26, 1992, at 4.) The easement rights are granted not to the public but to the gas company, its successors, and assigns. It is a blanket easement that fails to define or specify either the location, width, length, or other dimensions of the actual strip(s) of property to be (or actually) utilized by the gas company. No one taking the description used in the easement could locate the gas lines without probing every square inch of the park. If such a blanket easement could qualify as "dedicated," then the easement would appropriate the entire park for "general and public uses." We find such a result at odds with the word "dedicated" in the context of real property law. In our view, Congress meant the word "dedicated" as used in the statute to mean something more than "recorded."

We conclude that specificity in both location and dimension is required in the description for an easement to be considered to be "dedicated" for the purposes of § 541(a)(2).[3]

In the usual situation, a developer will file, record, and present to a public governing body (a city or county for instance) a plat of his property clearly delineating the corridors of that property that are available for general public use by utilities, and by doing so the corridors so delineated are dedicated to the use of the general public for utility purposes when the plat is accepted by the local governing body. *See, e.g.,* N.D.Cent.Code § 40–50.1–01, et seq. With respect to the mobile home park at issue here, the trial court found:

> The mobile home courts are large parcels of property upon which the owners have constructed streets, sidewalks, driveways and installed utility service connections to individual lots which are then rented to owners of mobile homes. For purposes of this case, the tracts of land involved are privately owned, the streets and drives and water and sewer systems are not dedicated to public use, and the cost of maintenance and snow removal falls upon the landowner, not the City of Minot, North Dakota. All utility services are now underground and generally do not lie on or under public rights of way.

> . . . .

> Mobile home parks are not required to be platted and no dedication is required of streets, alleys, and utility access as the entire tract remains with a single owner.

---

**3.** TCI seems to suggest that lack of specificity as to location of an easement need not be fatal. Apparently, if the utility provider "actually uses" a specific smaller portion of a larger tract of land pursuant to a blanket easement, that specific portion used—no more and no less—would provide the necessary description of the portion of the owner's land "dedicated to compatible uses." We disagree. A blanket easement even if recorded fails to notify the public of the specific allotment of property that is dedicated to public use. While the smaller portion actually used may be ascertainable as between the owner and the grantee of the easement at the time of the trenching, it certainly is not readily known to the public. With respect to the gas easement in this

case, it contains no language limiting it to a certain footage either side of the gas line as actually installed, and there is no showing of any agreement between the gas company and the grantors as to its width, although the gas company supervisor testified that the company would "claim" five feet either side of the installed pipes. (Appellee App. at 72.)

We also note that TCI has indicated that it seeks access to its own cables (currently used by TDC), which are located a significant distance from the pipelines laid pursuant to the gas easement. These cables do not fall within the easement as "actually used" by the gas company and therefore would not be accessible to TCI.

(District Ct. Mem. and Order, Mar. 26, 1992, at 2.) No party contests the correctness of these findings.

In *Cable Holdings*, the court declined to let a cable company piggyback on legal easements which an apartment complex owner (McNeil) had granted to a power company, among others, to cross McNeil's property to furnish electricity to the interiors of multiplex apartment buildings McNeil had built. In essence, that is what the previous owners of Robindale have done here. They have granted to the gas company the private right to enter upon and cross Robindale to furnish natural gas to the tenants renting the interior mobile home lots. The *Cable Holdings* court said:

McNeil has not recorded plats showing corridors of property available for general use by utilities seeking to access the interiors of McNeil's apartment buildings. Rather, through private negotiation and agreement, McNeil has allowed particular entities to cross its land and enter its buildings in order to provide service for the tenants of the buildings. These access rights are not dedicated easements within the language of Section [541(a)(2) ]....

*Cable Holdings*, 953 F.2d at 608–09.

So it is here. No owner of Robindale has ever recorded a plat showing corridors of property available for general use by utilities seeking to access the interior lots of the mobile home park. Rather, through private negotiation and agreements with the telephone company, the power company and the gas company, agreements reached long before the Cable Act was passed, Robindale has allowed those entities to enter upon and cross its land to furnish services to its tenants. There is no showing in this record of any intent by Robindale's owners, past or present, to dedicate anything to public utility use by the public. There is no showing here of any acceptance by the public (as opposed to the private gas company) of the purported dedication of the whole or any part of Robin-

dale for gas utility purposes. The fact that the agreement between Robindale and the gas company was made public in 1971 by its recording does not constitute "dedication" within the meaning of the Cable Act.

■ We agree with the *Cable Holdings* court that the types of easements accessible by a franchised cable company pursuant to Section 541(a)(2) are those which are recorded and which dedicate specific, ascertainable corridors of land for use by one or more utilities. *Id.* at 608.

## II.

The district court did not consider TCI's various other state law claims, gave no reasons for its dismissal of them, and we decline to review them for the first time on appeal. Having disposed of the federal questions raised in the case, we remand it for the sole purpose of the district court's considering whether or not it wants to reach the pendent state law claims TCI raised in its complaint against Schriock and TDC as they apply to the Robindale and Holiday Village mobile home parks.[4]

## III.

We hold that neither the private agreements between Schriock and the telephone and power companies nor the recorded easement granted to the gas company in Robindale mobile home park is an "easement ... dedicated for compatible uses" for the purposes of the Cable Act, 47 U.S.C. § 541(a)(2). Accordingly, we affirm the district court's judgment dismissing TCI's Cable Act claim seeking access to Robindale mobile home park and its Cable Act claim for damages for denial of access. We reverse the district court's judgment dismissing the remaining pendent state law claims and we remand this

4. The district court also found that the buried cable lines in both Robindale and Holiday Village mobile home parks were fixtures under North Dakota law. *See* N.D.Cent.Code § 47–06–04. On appeal, however, TCI challenges the district court's finding on this issue only with respect to

the cables in Holiday Village. (*See* Appellants' Br. at 30–34.) As we indicated in footnote 2, TCI has settled its differences with the owners of Holiday Village on the fixture issue. Hence, any fixture issue is irrelevant to this appeal.

case to the district court for the reasons stated.