**CENTURY SOUTHWEST CABLE TELEVISION, INC., Plaintiff–Appellee,**

v.

**CIIF ASSOCIATES, Defendant–Appellant.**

**No. 93–56725.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 4, 1994.

Decided Aug. 18, 1994.

J. Larson Jaenicke, Rintala, Smoot, Jaenicke & Brunswick, Los Angeles, CA, for plaintiff-appellee.

Terry S. Bienstock and Philip J. Kantor, Bienstock & Clark, Miami, FL, for Joint amicus curiae, Cablevision Industries, Inc., Comcast Cable Communications, Inc. and Cox Cable Communications, Inc.

Before: D.W. NELSON, NOONAN, Circuit Judges, and S.P. KING *, District Judge.

NOONAN, Circuit Judge:

CIIF Associates, a Massachusetts general partnership (CIIF), appeals the grant of a preliminary injunction in favor of Century Southwest Cable Television Inc., a Delaware corporation (Century). The case, of first impression in this circuit, involves the rights of an apartment owner to exclude a franchised cable television operator from servicing its apartments. We reverse the grant of the preliminary injunction.

### FACTS

The following are the only facts that were found by the district court:

Century holds a franchise from the City of Los Angeles to operate a cable television system in the area known as Franchise Area G, stretching from Calabasas to Studio City, south of Ventura Boulevard to Franklin on the Hollywood side and Sunset on the Beverly Hills side. CIIF is the owner of ViewPointe Apartments (Apartments), a 663 unit complex of 12 buildings within Franchise Area G.

In 1989, with the consent of the previous owner of the Apartments, Century installed a cable television distribution system at the Apartments. The system included conduit and wiring in the utility trenches connecting the twelve buildings and the internal wiring in the 12 buildings. The cables were also connected with 11 amplifiers within the

Jeffrey Kichaven, Alschuler, Grossman & Pines, Los Angeles, CA, Deborah C. Costlow, Winston & Strawn, Washington, DC, for defendant-appellant.

* Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

Apartments. As of October 1993 Century had approximately 350 subscribers at the Apartments.

In the course of 1993 Vanguard Communications, Inc. (Vanguard) entered into an agreement with CIIF to provide cable television to the Apartments beginning November 1, 1993. The agreement was to run for 15 years and excluded any other provider of cable television. Vanguard was not franchised by the city but operated a Satellite Master Antenna Television, which receives its signals through a satellite dish and retransmits signals by wire to units within the building it serves.

CIIF advised Century that its services to its subscribers would be terminated in November 1993.

### PROCEEDINGS

On October 26, 1993 Century applied for a temporary restraining order and preliminary injunction preventing CIIF from terminating its service to the Apartments. The district court granted the TRO. Century and Vanguard with the consent of CIIF then entered into an agreement permitting both Century and Vanguard to service the Apartments. As a result of this competition Century lost a substantial number of its customers at the Apartments.

On December 10, 1993 the district court granted the preliminary injunction sought by Century. The district court found that CIIF's threatened termination of Century's access to the Apartments violated a primary purpose of the Cable Communications Policy Act of 1984, 47 U.S.C. § 541(a)(2). The district court ruled that under § 541(a)(2) Century's system was "a compatible use with the utilities' rights of way or easements" and that therefore CIIF's threatened termination was a violation of Century's rights to co-use these easements.

In addition, the district court ruled that CIIF was precluded from terminating Century's right of access by California Public Utilities Code § 767.5, by *Salvaty v. Falcon Cable Television,* 165 Cal.App.3d 798, 212 Cal.Rptr. 31 (1985), and by Ordinance No. 163466 of the Los Angeles City Council.

The district court found that Century would be irreparably injured if the injunction were not issued and that CIIF would not be injured by its issuance.

CIIF appeals.

### ANALYSIS

*Century's Rights Under 47 U.S.C. § 541(a)(2).*

■ The federal statute authorizes the franchising of cable systems and declares: "Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is [are] within the area to be served by the cable system and which have been dedicated for compatible uses...." No public right of way is involved. For Century to prevail under the statute it must be able to show that it is using an easement "dedicated for compatible uses."

The first question is in what sense the statute uses "dedicated." Does the term mean merely "put aside for the use" of somebody, such as an utility, or does it mean a grant and a gift of an interest in land for public use? *See* B. Witkin, 4 *Summary of California Law* § 120 (1987 and 1993 Supp.). Several other circuits have held that Congress chose to use "dedicated" as the term is used in real property law, so that there must be a grant for public use for an easement to be "dedicated." *TCI of North Dakota, Inc. v. Schriock Holding Co.,* 11 F.3d 812, 817 (8th Cir.1993); *Media General Cable v. Sequoyah Condominium Coun.,* 991 F.2d 1169, 1173 (4th Cir.1993); *Cable Holdings of Georgia v. McNeil Real Estate,* 953 F.2d 600, 608–09 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 182, 121 L.Ed.2d 127 (1992). Century has offered no evidence of such dedication.

On the other hand, it is argued that "dedicated" should not be read in isolation but as part of a phrase, *viz.* "dedicated for compatible uses." Construed in this way, the statute is using "dedicated" in the broad sense of "committed to other purposes." It is in this way that the Federal Communications Commission, charged with the administration of the statute, has apparently construed the term. *Amendment to 47 C.F.R. Parts 1, 63,*

*76 and 78, Implementation of the Provisions of the Cable Communications Policy of 1984,* 50 Fed.Reg. 18,637 (1985). The FCC relied on House Committee on Energy and Commerce, H.R.Rep. No. 98–934, 98th Congress, 2nd Sess., 59, 1984 U.S.Code Cong. & Admin.News pp. 4655, 4696 (1984), which said: "Any private arrangements which seek to restrict a cable system's use of such easements or rights of way which have been granted to other utilities are in violation of this section [47 U.S.C. § 541(a)(2) ] and not enforceable." 50 Fed.Reg. at 18,647.

The Eleventh Circuit took a similar position in *Centel Cable TV v. Admiral's Cove Associates,* 835 F.2d 1359, 1362 (11th Cir. 1988). It is a matter of contention in the Eleventh Circuit whether its subsequent decision in *Cable Holdings of Georgia* repudiates this interpretation. *See Cable Holdings of Georgia, Inc. v. McNeil Real Estate,* 953 F.2d at 608–09.

■ To decide the present case we do not need to decide this disputed question of the meaning of "dedicated." Century has offered no evidence of easements within the 12 buildings of the Apartments which would come under the statute. The court is not free to speculate that the methods used by various utilities to reach the individual units are channels that Century uses to connect its wires to the television sets in the individual rooms of the individual units. The property owner cannot be assumed to have consented to the extension of Century's wires from the utility trenches to the individual units or to the placing of amplifiers or connection boxes on its property. The installation "of plates, boxes, wires, bolts, and screws to the building" or of wires and outlets in particular units constitutes a physical invasion of the property. *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 438, 102 S.Ct. 3164, 3177–78, 73 L.Ed.2d 868 (1982). The federal statute does not authorize such an invasion. *Cable Investments, Inc. v. Woolley,* 867 F.2d 151 (3d Cir.1989). As spelled out in splendid detail by Judge Sloviter in *Woolley,* Congress dropped a proposed § 633, which would have authorized such an invasion. *Id.* at 156–59. "Where Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended." *Russello v. United States,* 464 U.S. 16, 23–24, 104 S.Ct. 296, 300–01, 78 L.Ed.2d 17 (1983).

■ For this reason Century has made no case at all that it is likely to succeed on the merits, and it is not entitled to an injunction under the federal statute. A vague and general desire to promote competition is not a reason to permit the physical invasion of property. It is established law that the intrusion of a cable service onto rental property is a taking of the property, which can only be carried out by public authority for just compensation. *Loretto,* 458 U.S. at 441, 102 S.Ct. at 3179.

*The State Claims.*

■ Century alleged that there was diversity jurisdiction to consider Century's state law claims. Century failed, however, to allege the amount in controversy; the jurisdictional requirements of 28 U.S.C. § 1332, therefore, were not met. *Citizens Com. To Save Land Grant v. Burlington,* 708 F.2d 1430, 1435 (9th Cir.1983). The district court did have discretion to exercise its supplemental jurisdiction and to consider pendent state law claims along with the federal claim over which it exercised original jurisdiction. 28 U.S.C. § 1367. Without indicating the basis for jurisdiction, the district court apparently proceeded on this basis and adjudicated the state claims. Accordingly, we review them here.

These claims are without merit. *Salvaty, supra,* upon which the district court relied, dealt with an easement granted for the stringing of telephone and electric and power wires; the telephone company was held to be within its rights in apportioning the easement to permit stringing of a television cable. The property owner in *Salvaty* had granted the telephone company the right to apportion the easement. The apportionment was not contrary to the authority granted. No such easement has been shown to exist here.

■ Century has no chance of success under Cal.Pub.Util.Code § 767.5(c). The statute refers only to public easements, not to

private property. *See* Cal.Government Code § 53066.3. The teaching of *Loretto* as to takings would be violated by a different construction of the statute. Even the taking of a piece of property no bigger than a breadbox is of constitutional significance. *Loretto*, 458 U.S. at 438 n. 16, 102 S.Ct. at 3177–78 n. 16.

Finally, the city ordinance franchising Century gives Century no right to block the agreement made by CIIF and Vanguard, nor does it create any rights in Century to invade private property with wires, boxes and amplifiers undesired, objected to, and lawfully banished by the property owner.

*INJUNCTION VACATED.*