**CABLE ARIZONA CORPORATION, an Arizona corporation dba CableAmerica Corporation, Plaintiff–Appellant,**

v.

**COXCOM, INC., a Delaware corporation dba Coxcom Phoenix aka Cox Communications, Inc.; Feiga Partners LP, a partnership; BLDG Associates, Inc., a corporation; CLK Management Corp., a purported corporation; Bernard/Finney Management Services, Inc., an Arizona corporation, Defendants–Appellees.**

No. 99–17406.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 2001

Filed Aug. 17, 2001

Robert G. Schaffer (argued) and Warren Denetsosie, Lewis and Roca LLP, Phoenix, Arizona, for the plaintiff-appellant.

David B. Rosenbaum, Osborn Maledon, P.A., Phoenix, Arizona, for defendant-appellee CoxCom, Inc.

Mark Deatherage, Gallagher & Kennedy, P.A., Phoenix, Arizona, for defendant-appellee Feiga Partners, et al.

Before: REINHARDT, RYMER, and FISHER, Circuit Judges.

RYMER, Circuit Judge:

This appeal requires us to decide whether § 621(a)(2) of the Cable Communications Policy Act of 1984, 47 U.S.C. § 541(a)(2)—which gives cable franchisees the right to construct a cable system "over public rights-of-way, and through easements, . . . which have been dedicated for compatible uses"—allows a cable company access to individual units in a private apartment complex through easements granted to other cable providers.

Cable Arizona Corporation, which is also known as CableAmerica, is a franchised cable television service provider that brought suit against the owner of three apartment complexes in Mesa, Arizona (Feiga Partners), and CoxCom, Inc., likewise a cable service provider, alleging that they violated § 621(a)(2) by preventing CableAmerica from using private easements to offer cable service to residents of Feiga's apartments. The district court held that § 621(a)(2) allows a right of access only to easements dedicated to a public use. We now join four other circuits in holding that the Cable Act does not require access to private easements granted by a property owner to other cable operators.

As we have jurisdiction, 28 U.S.C. § 1291, we affirm.

I

CableAmerica and Cox provide cable television and information services. Both operate under licenses from the City of Mesa and are "franchises" under the Cable Act. 47 U.S.C. § 522(9). They provide services in the same way: each receives television programming signals by satellite at "earth stations" which are distributed to subscribers over a network of public easements and rights-of-way. From the trunk line, a "distribution line" is extended to the "point of demarcation" at the premises of a complex such as that owned by Feiga. For apartments, a "lockbox" at the point of demarcation is typically located at each building receiving cable service, and from there, the distribution line is connected to cable wire that extends into individual units within the building. Different companies can provide service to different tenants by attaching their equipment at the lockbox and directing their respective signals to particular units. However, only one cable operator's signal at a time can be directed from the point of demarcation to a specific apartment.

From 1987 to 1997, CableAmerica (and its predecessor) had cable service contracts with the Cimarron, Farmstead, and Tiburon Apartments in Mesa. Feiga declined to renew CableAmerica's contracts when they expired in March 1997, but CableAmerica continued to provide service until Feiga contracted with Cox March 1, 1998 to begin service as of August 1. This agreement gave Cox a non-exclusive easement across the Feiga apartments to install, maintain and operate its cable television equipment. With Feiga's permission, Cox removed CableAmerica's equipment when CableAmerica declined to do so.

CableAmerica then filed suit in Arizona state court alleging that Cox and Feiga had violated federal cable law, state anti-trust law, and state tort law. Cox and Feiga removed the action to the District Court for the District of Arizona.

In its Cable Act claim, CableAmerica alleges that it purchased and installed an upgraded cable system when it took over service to the Feiga apartments. The complaint avers that the system of wires running to specific apartments has been in place for years to provide essential means of access by cable operators, and that by providing the wiring system from the points of demarcation to individual tenants' apartments, Feiga dedicated easements to allow CableAmerica to do what is reasonably necessary to enjoy its easement so long as it has a franchise from the City of Mesa.

Cox and Feiga moved to dismiss the Cable Act claim pursuant to Fed.R.Civ.P. 12(b)(6). The district court granted the motion, holding that § 621(a)(2) grants access only to easements dedicated for public use.[1] CableAmerica timely appealed.

## II

■ CableAmerica's appeal turns on whether § 621(a)(2) authorizes co-use of all easements dedicated for compatible uses, public and private. Section 621(a)(2) provides:

> Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system and which have been dedicated for compatible uses, except that in using such easements the cable operator shall ensure—
>
> (A) that the safety, functioning, and appearance of the property and the convenience and safety of other persons not be adversely affected by the installation or construction of facilities necessary for a cable system;
>
> (B) that the cost of the installation, construction, operation, or removal of such facilities be borne by the cable operator or subscriber, or a combination of both; and
>
> (C) that the owner of the property be justly compensated by the cable operator for any damages caused by the installation, construction, operation, or removal of such facilities by the cable operator.

47 U.S.C. § 541(a)(2)(A)—(C).

This is not the first time we have seen the issue. Whether the phrase "easements ... dedicated for compatible uses" refers only to public easements or to both public and private easements was also presented in *Century Southwest Cable Television, Inc. v. CIIF Assocs.*, 33 F.3d 1068 (9th Cir.1994), but we resolved that case on different grounds. Now we must reach it.[2]

While the issue is one of first impression for us, it has been fully considered by other circuits. *See TCI of North Dakota, Inc. v. Schriock Holding Co.*, 11 F.3d 812, 814–15 (8th Cir.1993); *Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condomini-*

---

1. The court ultimately dismissed the remaining claims and entered a final judgment. Only the Cable Act claim is at issue on this appeal.

2. Cox and Feiga suggest that we could also affirm here on the ground that CableAmerica failed to show the existence of private easements covering Feiga's inside wiring as we did in *Century Southwest Cable*, 33 F.3d at 1071. However, we must take the allegations in CableAmerica's complaint as true for the purposes of Rule 12(b)(6), and the complaint alleges that the easements over Feiga's premises allow access to, and the use of, connections to individual tenants' apartments.

*um Council of Co–Owners,* 991 F.2d 1169, 1173 (4th Cir.1993); *Cable Holdings of Georgia, Inc. v. McNeil Real Estate Fund VI, Ltd.,* 953 F.2d 600, 608–09 (11th Cir.), *cert. denied,* 506 U.S. 862, 113 S.Ct. 182, 121 L.Ed.2d 127 (1992); *Cable Invs., Inc. v. Woolley,* 867 F.2d 151, 156–59 (3d Cir. 1989). As our colleagues on these courts have recognized, it is not self-evident how § 621(a)(2) should be interpreted. But each has answered the question as the district court did here. So do we.

## A

The statute itself does not define "dedicated." Not surprisingly, the parties contend for competing canons of statutory construction.

CableAmerica argues that the term "dedicate" should be given its common, ordinary meaning: to set apart to a definite use. *See United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) (construing a filing deadline literally and noting that courts generally "assume that 'the legislative purpose is expressed by the ordinary meaning of the words used'") (citation omitted); *Huffman v. Commissioner,* 978 F.2d 1139, 1145 (9th Cir.1992) (indicating that "[w]ords with a fixed legal or judicially settled meaning, where the context so requires, must be presumed to have been used in that sense" but that "[w]ords of both technical and common usage are construed in the latter sense unless the statute plainly indicates otherwise"). In CableAmerica's view, this interpretation best fits with the statute's language, which authorizes cable operators to provide cable programming through "easements [set aside/designated] for compatible uses." Cox counters that "dedicate" should be read in its plain, legal sense: to open up one's private property for public use. *See Corning Glass Works v. Brennan,* 417 U.S. 188, 201, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974) (construing phrase "working conditions" which has

both ordinary and technical meaning in technical sense when used in Equal Pay Act); *Bradley v. United States,* 410 U.S. 605, 609, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973) (construing the term "prosecutions" which has both everyday and legal meaning in familiar legal sense when used in drug act). As Cox sees it, "dedicate" is a term of art well known in the law of real property which Congress must have intended to have its established meaning in this statute. Under this construction, use of private property to run cable wires does not create a "dedicated" public easement.

Like the word "prosecutions" in *Bradley,* "dedicated" has an ordinary meaning and is also a familiar legal expression. In ordinary parlance, to dedicate can mean "to set apart to a definite use," *Webster's Ninth New Collegiate Dictionary* 332 (1990), while in the context of real property rights, it means "[t]o appropriate and set apart one's private property to some public use; as to make a private way public by acts evincing an intention to do so." *Black's Law Dictionary* 412 (6th ed.1990). "Dedication," as a term of art, is similarly defined: "The appropriation of land, or an easement therein, by the owner, for the use of the public, and accepted for such use by or on behalf of the public." *Id.* Here, "dedicated" is used in a statute that has to do with easements (a creature of real property law) and access by outsiders to property owned by others. Every appellate court that has confronted the issue has construed "dedicated" in § 621(a)(2) in its legal sense. *See TCI,* 11 F.3d at 814–17; *Media Gen. Cable,* 991 F.2d at 1172–75; *Cable Holdings,* 953 F.2d at 606–10. Their reasoning is persuasive. We do not repeat it, but agree that § 621(a)(2) provides a right of access over private easements only if the property owner has appropriated and set aside those easements for general use.

## B

CableAmerica argues that to interpret the Cable Act as applying only to public easements is inconsistent with legislative history because the House Report refers to utility easements and this reference shows that Congress understood the Act to encompass more than public easements.[3] However, reading § 621(a)(2) this way is difficult to square with the fact that the legislation once included a form of the right of access claimed by CableAmerica—proposed § 633—which was dropped from the final version of the Act.[4] As we remarked in *Century Southwest Cable*, 33 F.3d at 1071, this was "spelled out in splendid detail by Judge Sloviter in *Woolley*." It comes down to this:

> The fact that section 633 was not part of the Act as it ultimately emerged from Congress is a strong indication that Congress did not intend that cable companies could compel the owner of a multi-unit dwelling to permit them to use the owner's private property to provide cable service to apartment dwellers. *See Russello v. United States*, 464 U.S.

16, 23–24, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) ("Where Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended.").

*Woolley*, 867 F.2d at 156; *see also Cable Holdings*, 953 F.2d at 607 (same); *Media Gen. Cable*, 991 F.2d at 1174 (following *Woolley* and *Cable Holdings* ). In any event, whether or not it was contemplated that a cable operator may use easements dedicated for electric, gas, or other utilities *up to* a building, the Report's reference to utility easements sheds no light on whether mandatory access was intended through internal cable wiring *into* the individual units of a building.

CableAmerica maintains that the non-enactment of proposed § 633 is irrelevant because it would have prescribed unrestricted access to private property while § 621(a)(2) reflects a compromise, providing for the lesser right to co-use compatible easements that a landlord has already chosen to grant. Although not an implausible scenario, we effectively adopted the

**3.** The part of the Report upon which CableAmerica relies states:

> Subsection 621(a)(2) specifies that any franchise issued to a cable system authorizes the construction of a cable system over public rights-of-way, and through easements, which have been dedicated to compatible uses. This would include, for example, an easement or right-of-way dedicated for electric, gas or other utility transmission.... Any private arrangements which seek to restrict a cable system's use of such easements or rights-of-way which have been granted to other utilities are in violation of this section and not enforceable.

H.R.Rep. No. 98–934, at 59 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4696.

CableAmerica further notes that its view was the initial view of the Federal Communications Commission, the agency charged with implementing the Cable Act. *See* Implementation of the Provisions of the Cable Communications Policy Act of 1984, 50 Fed.Reg. 18,-

637, 18,647 (May 2, 1985) (to be codified at 47 C.F.R. pts. 1, 63, 76 & 78). However, the FCC has since withdrawn that interpretation in favor of taking no position. *In the Matter of Telecommunications Servs. Inside Wiring in the Matter of Implementation of the Cable Television Consumer Protection and Competition Act of 1992*, 13 F.C.C.R. 3659 ¶ 179, 1997 WL 644031 (1997).

**4.** According to the legislative history, proposed § 633(a) would have prohibited

> the owner of any multiple unit residential or commercial building or the owner of any manufactured home park (*i.e.*, mobile home park) from preventing or interfering with the construction or installation of any cable system facilities necessary to providing cable service, if such service has been requested by a lessee or owner of a unit in the building or park.

H.R.Rep. No. 98–934, at 80, *reprinted in* 1984 U.S.C.C.A.N. 4655, 4717.

*Woolley* analysis in *Century Southwest Cable.* Further, if private easements are not encompassed by § 621(a)(2), the possibility of co-use does not arise. Finally, as we shall explain, to hold otherwise raises a serious constitutional question that § 621(a)(2) leaves unsolved, as it provides just compensation to the property owner only for "damages caused by the installation, construction, operation, or removal of such facilities"—not for a taking of the easement (as proposed § 633 would have done).

### C

CableAmerica also urges us to reject a restrictive interpretation to avoid undermining the purposes of the Cable Act, which are to "promote competition in cable communications," 47 U.S.C. § 521(6), and to "provide the widest possible diversity of information sources and services to the public." § 521(4). Like the Eleventh Circuit, we decline to express an opinion on which construction best serves these objectives. *Cable Holdings*, 953 F.2d at 608. Beyond this, we are unable to discern much that is helpful. However, we do know that Congress has revisited § 621 twice since the opinions in *Woolley, Media Gen. Cable, TCI*, and *Cable Holdings* were rendered—amending the section in 1992 and 1996—without making any changes in response to how these decisions construed the statutory language. If these courts had misinterpreted Congressional intent to exclude private easements, Congress could have amended § 621(a)(2) to cure the er-

ror. Because it didn't, we cannot say that interpreting the statute as we do is inconsistent with the purposes of the Act. *See Bob Jones Univ. v. United States*, 461 U.S. 574, 599, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983) (non-action by Congress in the face of IRS interpretation of a statute indicates acquiescence); *Lewis v. United States*, 663 F.2d 889, 891 (9th Cir.1981) (Congress's silence indicates affirmation of judicially created doctrine).

### D

Even if we were not otherwise persuaded, construing § 621(a)(2) as authorizing access over private easements would gravely implicate the Takings Clause. In *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), the Supreme Court held that a New York law mandating access to private property for installation of cable facilities constituted a taking for which just compensation was due under the Fifth and Fourteenth Amendments. We do not need to decide, and we do not decide, whether co-use of a compatible easement does effect an unconstitutional taking. However, we have the same doubts as the Third, Fourth, Eighth, and Eleventh Circuits have noted,[5] and this concern supports our construing the statute reasonably to avert them.

■ Accordingly, we agree with the district court that § 621(a)(2) does not allow CableAmerica access to a private apartment complex through easements granted

---

**5.** *See TCI*, 11 F.3d at 815 ("If we were to adopt TCI's broad definition of 'dedicated,' serious questions would arise as to whether [§ 621(a)(2)] violated the Takings Clause of the federal constitution."); *Media Gen. Cable*, 991 F.2d at 1175 ("We recognize the validity of the fear that a broader reading of section 621(a)(2) could raise serious constitutional questions."); *Cable Holdings*, 953 F.2d at 605 (if § 621(a)(2) authorized the cable franchisee to construct its system on private property whenever an owner has permitted a compatible occupation, the "court would have substantial reservations regarding the constitutionality of the Cable Act"); *Woolley*, 867 F.2d at 159 ("[W]e are guided in no small part by the requirement to interpret a statute when possible to avoid raising constitutional questions.").

to other cable providers. Section 621(a)(2) only grants access to easements dedicated for public use.

AFFIRMED.