In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2442

STEPHEN R. WEST,

*Plaintiff-Appellant,*

*v.*

LOUISVILLE GAS & ELECTRIC COMPANY,

*Defendant,*

*and*

CHARTER COMMUNICATIONS, INC., and SPECTRUM MID-AMERICA, LLC,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 4:16-cv-00145-RLY-DML — **Richard L. Young**, *Judge.*

ARGUED JANUARY 15, 2020 — DECIDED MARCH 2, 2020

Before BAUER, EASTERBROOK, and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* This appeal presents a question about how 47 U.S.C. §541(a)(2), part of the Cable Com-

munications Policy Act of 1984, affects use of a utility easement in Indiana.

In 1938 a predecessor of Stephen West granted a perpetual easement to a predecessor of Louisville Gas & Electric Company, permitting it to build and maintain a 248-foot-tall tower carrying high-voltage electric lines. (Ownership of both the underlying land and the easement has changed hands since 1938. For simplicity we refer to the current owners.) In 2000 Louisville Gas permitted Charter Communications to install on the towers a fiber-optic cable that carries communications (telephone service, cable TV service, and internet data). Louisville Gas asked in 1990 for explicit permission to do this, and West refused. In 2000 it concluded that the existing easement allows the installation of wires that carry photons (that is, fiber-optic cables) along with the wires that carry electrons. West disagreed and filed this suit under the diversity jurisdiction, seeking compensation from Louisville Gas, under Indiana's substantive law, for the addition of the new cable.

Some time later West added Charter Communications, Insight Kentucky Partners II, L.P., and "Time Warner Cable" as additional defendants. As far as we can tell Time Warner Cable is a trade name rather than a juridical entity. There used to be a Time Warner Cable Inc., but it merged into Charter in 2016. We have omitted Time Warner Cable from the caption and do not mention it again, as trade names are not suable. See *Schiavone v. Fortune*, 477 U.S. 21 (1986). Insight Kentucky Partners II also has disappeared by merger; its successor appears to be Spectrum Mid-America, LLC, which we have substituted in the caption, though Insight Kentucky Partners II remains relevant to jurisdiction.

The district court granted Charter's motion to dismiss on the pleadings, ruling that §541(a)(2) gives it a right to use existing easements dedicated to service as utility corridors. 2018 U.S. Dist. LEXIS 2832 (S.D. Ind. Jan. 8, 2018). But the judge denied Louisville Gas's motion to dismiss, writing that some issues of Indiana law could not be resolved on the pleadings. 2018 U.S. Dist. LEXIS 2830 (S.D. Ind. Jan. 8, 2018).

West wanted to appeal immediately. But instead of asking the district judge to issue a partial final judgment under Fed. R. Civ. P. 54(b), he dismissed his claim against Louisville Gas without prejudice, reserving a right to reinstate it after an appellate decision about his rights vis-à-vis Charter. We dismissed the ensuing appeal, observing that it has long been settled that parties cannot use a dismiss-and-reinstate plan to circumvent the final-decision rule of 28 U.S.C. §1291. See *West v. Louisville Gas & Electric Co.*, 920 F.3d 499 (7th Cir. 2019). West then settled his dispute with Louisville Gas and filed a second appeal.

Unfortunately, the experience of having one appeal dismissed did not induce counsel to pay attention to appellate jurisdiction the second time around. Circuit Rule 30(a) requires the appellant to submit, bound with the brief, an appendix containing "the judgment or order under review". Despite certifying compliance with this rule, West's appellate lawyers (he has five) omitted the judgment. We tracked it down and found, to our surprise, that it does not mention Insight Kentucky Partners II or its successor. Appeal is possible only after final decision has been entered with respect to all litigants; that was the central point of our opinion dismissing West's first appeal. Yet no one asked the district court to enter a judgment wrapping up the case, and no one

brought the problem to our attention either. When we point-
ed out the problem at oral argument, counsel seemed sur-
prised. We suggested that they ask the district judge to enter
a judgment covering all litigants, as they should have done
before appealing. That has now been accomplished—though
the district court named Insight Kentucky Partners II despite
the fact that the merger preceded the judgment by five
weeks.

Having assured ourselves that we have appellate juris-
diction, we must turn to subject-matter jurisdiction. It's easy
enough to determine the twin citizenships of Charter Com-
munications (Delaware and Connecticut). West is a citizen of
Indiana, and Louisville Gas a citizen of Kentucky. So far, so
good. But Insight Kentucky Partners II was not a corpora-
tion, so its citizenship depended on the citizenships of each
partner—and if any partner is itself a partnership or limited
liability company, then the identity of each member of each
of these entities must be traced until we reach a corporation
or natural person. See, e.g., *Carden v. Arkoma Associates*, 494
U.S. 185 (1990) (citizenship of a partnership is that of every
partner, limited as well as general); *Indiana Gas Co. v. Home
Insurance Co.*, 141 F.3d 314, rehearing denied, 141 F.3d 320
(7th Cir. 1998). (It is the citizenship of Insight Kentucky
Partners II rather than Spectrum Mid-America that matters,
because subject-matter jurisdiction depends on the state of
affairs when a case begins.)

West's complaint treats Insight Kentucky Partners II as if
it were a corporation. In this court he says that he recognized
that it isn't one, but because he did not know the details of
its ownership structure, that was the best he could do. It's
not good enough. The district judge should have insisted

that all details of citizenship be established on the record but did not do so; as far as we can see the judge never broached the issue.

> Charter's brief in this court tells us:

> Insight Kentucky Partners II, L.P., and all but one of its members, and its members' members, are Delaware limited liability companies with principal places of business in Stamford, Connecticut. The sole exception is member Advance/Newhouse Partnership, which is a New York partnership with a principal place of business in New York. None of Advance/Newhouse Partnership's members, or its members' members, are citizens of Indiana.

We've held repeatedly that there's no such thing as a [state name here] partnership or LLC, that only the partners' or members' citizenships matter, and that their identities and citizenships must be *revealed*. See, e.g., *Guaranty National Title Co. v. J.E.G. Associates*, 101 F.3d 57, 59 (7th Cir. 1996). We do not blithely accept assurances along the lines of "no one on our side is a citizen of the opposing litigant's state." We're especially unlikely to do so when the litigant describes a partnership as a limited liability company. Do Charter's lawyers really not know the difference? It should have been enough for them to read Circuit Rule 28(a)(1), which provides among other things: "If any party is an unincorporated association or partnership the statement shall identify the citizenship of all members." Charter's brief does not comply with Rule 28(a)(1).

The court reviews jurisdictional matters before argument and directs parties to furnish missing details. We informed Charter that its statement did not comply with the requirements. In response—it said the same thing again! Counsel still had not complied with Circuit Rule 28(a)(1), which re-

quires the statement to "identify the citizenship of all members." Nor was counsel familiar, at oral argument, with the Supreme Court's insistence that *only* corporations receive the treatment specified by 28 U.S.C. §1332(c)(1), under which each corporation has two state citizenships (incorporation and principal place of business). Every other entity is transparent, and the court needs to know the citizenships of every partner or member, tracing through however many layers there may be. Compare *Carden* and *Navarro Savings Association v. Lee,* 446 U.S. 458 (1980) (the citizenship of a trust is that of its trustees), with *Hertz Corp. v. Friend*, 559 U.S. 77 (2010) (discussing the special rule for corporations). At argument we directed counsel to comply, at long last, with Circuit Rule 28(a)(1) and furnish the details that the Supreme Court has held are essential.

The jurisdictional statement that Charter filed in response to this order discloses that Insight Kentucky Partners II had an ownership structure 14 [!] levels deep. It took Charter four single-spaced pages to identify the owners. Most of the names occur over and over. Having worked this through ourselves, and having concluded that there were 17 rather than 14 layers (that there should be difficulty counting them is one of many problems with the structure), we are left with the conclusion that every branch of the chain led to a corporation that is neither incorporated in Indiana nor has a principal place of business there. Complete diversity of citizenship exists, though the parties have wasted a good deal of judicial time on the road to this conclusion.

The 1938 easement grants Louisville Gas

> a right-of-way and perpetual easement to maintain, operate, renew, repair and remove a line or lines of poles and towers and

all necessary equipment, wires, cables and appurtenances in connection therewith, for the transmission, distribution and delivery of electrical energy to the Grantee and other persons and concerns and to the public in general for light, heat, power, telephone and/or other purposes[.]

West maintains that the breadth of this grant, which includes "telephone and/or other purposes", was narrowed in 1976 by a supplemental agreement that does not refer to telecommunications. But because the 1976 document begins by stating that "Grantors hereby convey and re-convey to the Company all rights heretofore acquired by the Company or its predecessors", the remainder of the document necessarily leaves in place the "telephone and/or other purposes" authority. The district court thought that any other dispute is resolved by §541(a)(2), which reads:

Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system and which have been dedicated for compatible uses, except that in using such easements the cable operator shall ensure—

(A) that the safety, functioning, and appearance of the property and the convenience and safety of other persons not be adversely affected by the installation or construction of facilities necessary for a cable system;

(B) that the cost of the installation, construction, operation, or removal of such facilities be borne by the cable operator or subscriber, or a combination of both; and

(C) that the owner of the property be justly compensated by the cable operator for any damages caused by the installation, construction, operation, or removal of such facilities by the cable operator.

West does not contend that, when on his land to install the cable, Charter's agents or employees caused damage within

the scope of §541(a)(2)(C). Instead West denies that the tower has been "dedicated for compatible uses".

One might think as an initial matter that the question of "dedication" would be resolved between Charter and Louisville Gas. After all, the fiber-optic cable is located on Louisville Gas's towers, and if it interferes with their primary function (transmitting electricity) then Louisville Gas might be entitled to compensation under §541(a)(2)(C) or the Takings Clause of the Constitution. But Louisville Gas is not protesting. The telecom cable on the towers does not cause any injury to West and is not a new "occupation" of his land for the purpose of *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982). The thing occupying some of West's land is the 248-foot-tall tower, not any particular cable strung from one tower to another.

Indeed, there is not even an extra cable. There has always been a lightning-conducting cable at the top of the towers. Charter replaced that solid cable with a hollow one, having glass fibers on the inside and a metal layer outside to deal with lightning. The exchange required some foot and helicopter traffic, but the easement permits Louisville Gas and its agents to enter the land to renew and maintain the towers and transmission cables. Replacing a lightning cable with a lightning-and-telecom cable fits comfortably within the renew-and-maintain power. Information passing through a cable could not independently be a trespass, any more than it would be trespass if Louisville Gas wheeled electric power from some other company. Information passes across West's land constantly: over-the-air radio and TV signals, cell phone communications (voice and data), microwaves, and

more. None of that differs from laser light travelling through glass fiber.

Still, West insists, the easement's grant extends only to Louisville Gas and its successors (of which Charter is not one). He contends that §541(a)(2) can't be used to allow a third party such as Charter to add even a new *interior* of a lightning cable to the towers, whether or not Louisville Gas is content with the substitution. West relies principally on decisions of other circuits, which he reads as holding that "dedicated for compatible uses" in §541(a)(2) means "dedicated *to the public* for compatible uses"—and whatever the 1938 easement may do, it does not open the transmission corridor to the general public. The cases West cites include *Cable Arizona Corp. v. Coxcom, Inc.*, 261 F.3d 871, 874 (9th Cir. 2001); *TCI of North Dakota, Inc. v. Schriock Holding Co.*, 11 F.3d 812, 814 (8th Cir. 1993); *Media General Cable of Fairfax, Inc. v. Sequoyah Condominium Council of Co-Owners*, 991 F.2d 1169, 1173 (4th Cir. 1993); and *Cable Investments, Inc. v. Woolley*, 867 F.2d 151, 155–59 (3d Cir. 1989).

Adding language to a statute—turning "dedicated for compatible uses" into "dedicated to the public for compatible uses"—is a legislative rather than a judicial task. It is not at all clear to us that the decisions to which West points have done any such thing. They arose from situations, similar to *Loretto*, in which a telecom operator wanted to add cables to the interior of dwellings that lacked them. The problem for the cable operators in those cases was that the owners had not dedicated their land for telecom uses. West, by contrast, has by contract (the easement) dedicated a big chunk of land to electromagnetic transmission. (The easement covers not

only the base of the tower but also 100 horizontal feet under the wires, so that no other structure comes too close.)

The parties want us to read the word "dedicated" in §541(a)(2) as if it had a federal meaning distinct from concepts of property. Yet whether a given easement in Indiana dedicates a given corridor to a particular kind of use ought to be understood as a matter of Indiana law. See, e.g., *Rodriguez v. FDIC*, No. 18–1269 (U.S. Feb. 25, 2020), which discusses the strong preference for using state law to determine property interests. (Alternatively, one might say that federal law incorporates rules of state law on the matter, since there is no freestanding federal law of easements. Cf. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979); *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015).) It is easy to imagine a rule of state law under which only the most explicit language in an easement dedicates the land to any given use—and it is equally easy to imagine a rule of state law that reads easements more broadly. Where does Indiana stand?

The answer is that Indiana is permissive. It treats easements as permitting new uses compatible with the original grant. See *Howard v. United States*, 964 N.E.2d 779, 783 (Ind. 2012) ("a new use that is compatible with the original *purpose* is within the scope of the easement") (emphasis in original), relying on *Fox v. Ohio Valley Gas Corp.*, 235 N.E.2d 168 (Ind. 1968). "The owner of an easement, known as the dominant estate, possesses all rights necessarily incident to the enjoyment of the easement. The dominant estate holder may make repairs, improvements, or alterations that are reasonably necessary to make the grant of the easement effectual." *McCauley v. Harris*, 928 N.E.2d 309, 314 (Ind. App. 2010) (internal citation omitted). See also *Rehl v. Billetz*, 963 N.E.2d 1

(Ind. App. 2012). What's more, most states permit the holder of an easement to allow third parties to use rights available under the easement. See *Restatement (Third) of Property (Servitudes)* §5.9 (2000). We have not seen anything to suggest that Indiana would reject that principle.

So as far as we can tell, then, the use that Louisville Gas and Charter have jointly made of the easement is permissible under Indiana law. At least the air rights have been "dedicated" to transmission, and a telecom cable is "compatible" with electric transmission. Both photons and electrons are in the electromagnetic spectrum. Now that West and Louisville Gas have settled their own differences about the scope of the 1938 easement, there is no basis for any relief against Charter. Whether other states' laws, or other situations (such as an easement for a buried gas pipeline being used as the springboard for a cable company to build towers and string lines above the corridor), would justify a more restrictive reading of what has been "dedicated for compatible uses" is a question for some other case.

AFFIRMED