Steve GERSTEIN d/b/a Gerstein
Communications, Appellant,

v.

Howard L. AXTELL and Patricia L.
Axtell, and Golden Valley Electric
Association, Appellees.

No. S–7514.

Supreme Court of Alaska.

June 19, 1998.

Joseph W. Sheehan, Law Offices of Joseph
W. Sheehan, Fairbanks, for Appellant.

Charles Cole, Fairbanks, for Appellees
Howard L. and Patricia L. Axtell.

John J. Burns, Birch, Horton, Bittner and
Cherot, Fairbanks, for Appellee Golden Val-
ley Electric Association.

Donald C. Ellis, Kemppel, Huffman and
Ellis, P.C., Anchorage, for Amicus Curiae
Alaska Rural Electric Cooperataive Associa-
tion, Inc.

Before COMPTON, C.J., and
MATTHEWS, EASTAUGH, FABE and
BRYNER, JJ.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Gerstein Communications (GC) is a cable
television franchisee. Citing the access pro-
visions of the Cable Communications Policy
Act of 1984, 47 U.S.C. § 521 *et seq.* (the
"Cable Act"), GC sued landowners Howard
and Patricia Axtell and the Golden Valley
Electric Association (GVEA) to obtain access
to use a private easement owned by GVEA
and located on the Axtells' property. The
superior court granted partial summary
judgment to GVEA and the Axtells, and held
that 47 U.S.C. § 541(a)(2) does not give cable

franchisees access to private easements.[1] Because GC would have had to justly compensate the Axtells for use of the easement if 47 U.S.C. § 541(a)(2) did permit access, we conclude that GC's appeal from those rulings is moot because GC later used its eminent domain power to obtain access to the easement and paid the landowners $500. We therefore affirm.

## II. *FACTS AND PROCEEDINGS*

GC provides cable television services in the Fairbanks area. Although GC's service area encompasses the property owned by Howard and Patricia Axtell, GC does not provide cable service to the Axtells. The Axtells' property consists of Tax Lots (TL) 2004 and 2010, located near the junction of Steele Creek Road and Bennett Road. The Axtells live on TL 2004; TL 2010 contains trees and a hay field.

GVEA holds a blanket "right-of-way easement" across the Axtells' property to "construct, operate and maintain ... an electric transmission or distribution line or system." [2] The Axtells' predecessor-in-interest had granted the easement to GVEA in 1953; the Axtells purchased the property in 1968 subject to the easement. GVEA maintains an electric distribution line in the GVEA easement on TL 2010. A Municipal Utilities System (MUS) telephone line is also buried within the GVEA easement.

In 1992 GC began installing cable in the Steele Creek Road area. GC's owner, Steve Gerstein, affied that the only economically feasible way to service subscribers to the north of his Steele Creek Road receiving station was to place a cable distribution line across TL 2010 (the Axtells' hay field), following GVEA's Steele Creek Road distribution line.

When the Axtells denied GC access to GVEA's easement, GC filed suit, seeking a declaration that 47 U.S.C. § 541(a)(2) gives it access to the GVEA easement. GC alternatively asked the court to exercise its eminent domain power and condemn a sufficient portion of the Axtells' property as an easement through which GC could run its cable distribution line.

The third and fourth counts of GC's complaint sought damages for GC's inability to provide cable television services to areas beyond the Axtells' property as a result of the Axtells' refusal to grant GC access to the GVEA easement. In order to limit any potential damages under the third and fourth counts, the Axtells agreed in September 1994 to permit GC to install an underground cable line parallel and adjacent to GVEA's distribution line on TL 2010, pending resolution of the litigation. This agreement mooted Counts III and IV.

Based on GVEA's opposition to GC's claim that it had a right of unrestricted access to GVEA's private easement, the superior court permitted GVEA to intervene. GVEA sought partial summary judgment, seeking dismissal of all GC claims that relied on § 541(a)(2). The court granted the Axtells' and GVEA's motion, holding that the Cable Act did not authorize GC's use of GVEA's easement on the Axtells' property.

---

**1.** Subsection 541(a)(2) authorizes a cable franchisee to construct a cable system "over public rights-of-way, and through easements, which is [sic] within the area to be served by the cable system and which have been dedicated for compatible uses." 47 U.S.C. § 541(a)(2) (1984).

**2.** "A right of way is primarily a privilege to pass over another's land.... A right of way may be either public or private, that is, it may be a right of passage of which every individual may avail himself, or it may exist for the benefit of one individual or class of individuals." 3 Herbert Thorndike Tiffany, *The Law of Real Property* § 772, at 232 (Basil Jones, ed., 3d ed. 1939 & Supp.1997).

An easement involves primarily the privilege of doing a certain class of act on, or to the detriment of, another's land, or a right against another that he refrain from doing a certain class of act on or in connection with his own land, the holder of the easement having, as an integral part thereof, rights against the members of the community generally that they shall not interfere with the exercise or enjoyment of the easement.

*Id.* § 756, at 200–01.

The United States Court of Appeals for the Eighth Circuit has described one blanket easement as failing to "define or specify either the location, width, length, or other dimensions of the actual strip(s) of property to be (or actually) utilized by the [holder of the easement]." *TCI of North Dakota, Inc. v. Schriock Holding Co.,* 11 F.3d 812, 816 (8th Cir.1993).

The superior court granted GC's request for exercise of the court's eminent domain power to condemn an easement across the Axtells' property to run GC's cable distribution line. The 5–foot wide, 437–foot long right-of-way easement tracks the location of the cable GC had already installed under the agreement between GC and the Axtells. The superior court found that the Axtells "made location of the easement in the same place as the cable is presently located one of the conditions for their non-objection to the exercise of eminent domain." The cable line runs parallel to the electric and telephone lines.

GC paid the Axtells $500, the amount the court-appointed master determined to be just compensation for the taking. The condemnation judgment was entered in May 1996. GC appeals from the rejection of its Cable Act claims.

## III. DISCUSSION

### A. Is GC's Cable Act Claim Moot?

GVEA argues that GC's Cable Act claim is moot. We have stated that "[u]nder ordinary circumstances, we will refrain from deciding questions where events have rendered the legal issue moot." *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1195 (Alaska 1995) (citations omitted). A claim will be deemed moot "if it has lost its character as a present, live controversy." *Id.* We have further held that "'[a] case is moot if the party bringing the action would not be entitled to any relief even if they prevail.'" *O'Callaghan v. State*, 920 P.2d 1387, 1388 (Alaska 1996) (citations omitted).

GVEA contends that because GC has already obtained an easement across the Axtell property through eminent domain, there is no relief possible for GC, even if it prevails on appeal. GVEA argues that, according to the terms of GC's stipulation with the Axtells, GC is not entitled to the $500 it paid as just compensation for the taking. The stipulation states that "[t]here will be no appeal of the Master's decision to the Supreme Court."

GC argues that if we hold GC has the right to use GVEA's easement, GC "has no obligation to 'take' any portion of the Axtells' property and/or to compensate the Axtells

for the use of GVEA's easement." GC contends that relief is possible if it prevails— recovery of the $500 it paid the Axtells for the easement. GC also argues that the stipulation not to appeal the master's decision relates only to the issue of the *amount* of damages.

■ We conclude that GC's claim is moot. Without deciding whether § 541(a)(2) authorizes access to private easements, we note that such a construction would violate the Fifth Amendment's prohibition against "taking" without just compensation unless the Cable Act were also construed to provide for just compensation for any taking. *See Cable Holdings of Georgia, Inc. v. McNeil Real Estate Fund VI, Ltd.*, 953 F.2d 600, 604–06 (11th Cir.1992).

*Loretto v. Teleprompter Manhattan CATV Corp.* suggests that GC's unconsented physical use of the Axtells' easement, even if authorized by the Cable Act, would be a taking that requires just compensation. *See Loretto*, 458 U.S. 419, 421, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (holding that "a minor but permanent physical occupation of an owner's property authorized by the government constitutes a 'taking' of property for which just compensation is due under the Fifth and Fourteenth Amendments of the Constitution").

The Cable Act seems to require just compensation. Subsection (C) of § 541(a)(2) requires the cable operator to ensure that, "the owner of the property be justly compensated by the cable operator for any damages caused by the installation, construction, operation, or removal of such facilities by the cable operator." *But see Cable Holdings*, 953 F.2d at 604 n. 2. (stating that subsection (C) applies exclusively to damages, and does not provide just compensation for the taking); *Cable Invs., Inc. v. Woolley*, 867 F.2d 151, 158 (3d Cir.1989) (same).

■ GC obtained its easement through eminent domain. The central objective in eminent domain proceedings is to determine just compensation. *See Babinec v. State*, 512 P.2d 563, 570 (Alaska 1973). GC has already paid the Axtells $500, the amount the court-appointed master determined to be just com-

pensation for the taking. This amount is equivalent to the amount GC would be required to pay the Axtells as just compensation assuming the Cable Act authorized access. Because GC would not be entitled to recover the $500 it paid the Axtells even if it prevailed on its Cable Act claim, we conclude that this controversy is moot.

**B.** *Is GC's Cable Act Claim Regarding GVEA's Standard Form Easement Justiciable?*

The superior court denied GC's reconsideration motion, which asked the court to decide whether the Cable Act authorizes GC to use GVEA's easements obtained under the standard easement form GVEA currently uses. GVEA's access to the Axtells' property was granted under an easement form that differs from the easement form GVEA now uses. GC asks us to consider whether GVEA's current easement form gives GC access to GVEA's easements. Because the standard easement form that GVEA currently uses differs from the form that gave GVEA access to the Axtells' land, any dispute about the current form does not create an actual controversy. *See Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1035–36 (Alaska 1972), *overruled in part on other grounds by City of Juneau v. Thibodeau*, 595 P.2d 626, 629 (Alaska 1979). We consequently decline to decide this question to avoid issuing an advisory opinion.