*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

CLEMENTINE F. )
)                      Supreme Court No. S-15948
            Appellant, )
)                      Superior Court No. 3CO-15-00001 CN
    v. )
)                      O P I N I O N
STATE OF ALASKA, )
DEPARTMENT OF HEALTH & )    No. 7109 – June 17, 2016
SOCIAL SERVICES, OFFICE OF )
CHILDREN'S SERVICES, )
)
            Appellee. )
_____ )

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Cordova, Daniel Schally, Judge pro tem.

Appearances: Brian D. Camozzi, Law Office of Gregory S. Parvin, Anchorage, for Appellant. Jonathan A. Woodman, Senior Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee. Marika R. Athens, Assistant Public Advocate, and Richard K. Allen, Public Advocate, Anchorage, Guardian Ad Litem.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

BOLGER, Justice.
STOWERS, Chief Justice, with whom MAASSEN, Justice, joins, dissenting.

## I.    INTRODUCTION

The Office of Children's Services (OCS) took emergency custody of a child after receiving reports that her mother's conduct had placed her at risk of harm.  OCS then investigated the child's father, who lived out of state, and determined that the child would be safe in his care.  At the temporary custody hearing, the superior court granted the father's motion to dismiss the case and ordered the child released from OCS custody.  The mother appeals, arguing that the court should have granted her request for a continuance and held an evidentiary hearing on the father's conduct and that the court erred by dismissing the petition without first making findings on the allegations it contained.  We conclude that the mother had no right to an evidentiary hearing on the father's conduct and that the superior court did not err by dismissing the petition when OCS declined to pursue it.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Jasmine was born in February 2009 to Clementine and Jermaine.[1]  Both parents have equal legal rights to Jasmine, and there is no custody order in place.  When this case began, Clementine resided in Cordova with Jasmine, and Jermaine resided in Minnesota.

In July 2014 OCS began receiving protective service reports that raised concerns about Jasmine's safety in Clementine's care.  Reports filed in July, September, and October 2014 alleged that Clementine was using heroin and methamphetamine, that Clementine was spending nights with Jasmine at the homes of drug dealers, and that Jasmine had been sexually abused by her babysitter.  In January 2015 OCS received a protective service report alleging that Clementine left Cordova and did not take Jasmine

---

[1]    We use pseudonyms throughout to protect the privacy of the parties.

with her. In February Clementine's friend Jewel reported that Clementine dropped Jasmine off with Jewel and did not return for several weeks. Jewel told OCS that this conduct was part of a pattern for Clementine, who frequently left Jasmine with Jewel for weeks at a time despite plans to return within a few days.

OCS also received a report alleging that on March 4, Clementine and Jasmine had moved into a trailer with an individual known to be using and possibly dealing drugs. OCS met with Clementine shortly after it received this report. During the meeting Clementine stated that she intended to move to Soldotna because she had nowhere to live in Cordova; she denied using drugs or alcohol but refused to perform a field sobriety test or submit to urinalysis. Jasmine told OCS and the police that loud noises at night had prevented her from sleeping since she and Clementine had moved into the trailer and that she no longer attended school.

**B.     Proceedings**

OCS took Jasmine into emergency custody on March 6 and placed her in a foster home. On March 9 OCS filed an emergency petition for adjudication of Jasmine as a child in need of aid (CINA). Magistrate Judge Kay Adams held an initial hearing that same day, made a preliminary finding of probable cause to believe that Jasmine was a child in need of aid, and found that it was not in Jasmine's best interests to allow her to remain with Clementine. At the hearing the court appointed Assistant Public Defender Michael Horowitz as counsel for Clementine and also appointed a guardian ad litem for Jasmine. Jermaine attended the hearing telephonically, but he did not request the appointment of counsel at that hearing. Magistrate Judge Adams continued the temporary custody hearing until March 24.

Superior Court Judge pro tem Daniel Schally presided over the March 24 hearing. Clementine did not appear at this hearing, and Horowitz reported that he had

been unable to contact Clementine prior to the hearing and had not yet spoken with her. The court appointed counsel for Jermaine at the hearing at his request.

OCS reported at the hearing that Jasmine was currently living with Jewel and that it was investigating whether there were any safety concerns with releasing Jasmine to Jermaine's custody. The court kept Magistrate Judge Adams's preliminary findings in place but continued the temporary custody hearing until April 2 so that Jermaine could "speak with a lawyer and go over some things with them so [he's] able to move forward intelligently" and so that Horowitz could contact Clementine.

On March 27 Clementine filed a motion objecting to placement of Jasmine with Jermaine. Clementine stated that she was opposed to Jermaine taking Jasmine back to Minnesota; she would prefer that Jasmine continue to live with Jewel. Clementine's objection noted that OCS told Jewel that OCS "intend[ed] to give placement of [Jasmine] to . . . [Jermaine], on Wednesday[,] April 1, 2015, the day before the continued probable cause hearing on April 2, 2015." Clementine specifically objected to "the timing of the proposed change" in placement and argued that "[n]either OCS nor any other representative of the State ha[d] notified [her counsel] of the proposed change." Clementine based her objection on her allegations that Jermaine had previously had very limited contact with Jasmine and had not strongly bonded with the child, while Jasmine had a strong bond with Jewel.

On April 1 the State filed a response to Clementine's objection. The State argued that "[a]ll the parties . . . were on notice that custody would likely be released once OCS verified that [Jermaine] had no Minnesota [Child Protection Services] history. The information . . . was expressly provided so that everybody was on notice that the State anticipated [Jasmine] being released to [her] father."

Jermaine also filed a motion on April 1 requesting that the court release custody of Jasmine to him and dismiss the case. He asserted that OCS had reviewed his criminal and Child Protection Services records in Minnesota and Alaska and concluded that it had no safety concerns with releasing Jasmine to his custody. Jermaine requested expedited consideration of his motion because he was scheduled to fly out of Alaska on April 2.

In the meantime the Public Defender Agency identified a conflict of interest that prevented Horowitz from continuing to represent Clementine. On March 31 attorney Brian Camozzi filed a superseding entry of appearance on Clementine's behalf. But, according to Clementine, "correspondence between the parties . . . was directed to . . . Horowitz rather than [Camozzi] until 2:52 PM on April 1."

Upon receipt of his first email regarding Clementine's case, Camozzi immediately prepared and filed a response opposing Jermaine's motion to release custody. In this opposition, Clementine argued that the court should order OCS to retain custody of Jasmine so that Clementine could conduct discovery and determine whether Jermaine posed a risk to Jasmine's safety. In particular, she raised concerns that Jermaine had abandoned Jasmine under AS 47.10.013 because he had not paid child support in the last three years. Clementine also argued that releasing Jasmine to Jermaine would not be in Jasmine's best interests. She asked the court to deny Jermaine's motion to release custody and to conduct an evidentiary hearing regarding Jasmine's release, noting that since Camozzi had just joined the case, he would need more time to prepare for that hearing.

At the April 2 temporary custody hearing, OCS and the guardian ad litem both supported Jermaine's motion. Clementine repeated her request that the court keep

Jasmine in foster care until the court could hold an evidentiary hearing on Jermaine's history with child support obligations and whether his lack of contact might amount to abandonment of Jasmine.

At the end of the hearing the superior court concluded that there was not "sufficient information . . . to make any kind of finding that release to [Jermaine] is not appropriate." The court explained that Clementine could not directly bring child in need of aid allegations against Jermaine because "it's the State['s] . . . decision whether or not to move forward with such allegations, and the State . . . is not doing so in this case, has not done so, and has pretty clearly stated that they have no intention of doing so." But the court reasoned that "to the extent that [Clementine was] making a request under [CINA Rule 6] . . . to grant emergency custody to [OCS]," such a request would fail because her petition was not "supported by a statement of fact sufficient to show that [Jasmine] is in need of aid and is in a condition which requires the immediate assumption of custody [by OCS]."[2] Accordingly, the court released Jasmine from OCS custody and dismissed the case.

Clementine then filed a motion asking the court to reconsider its decision, arguing (1) that the court erred in applying CINA Rule 6(b) to her opposition and that the court should instead have applied CINA Rule 19.1(b)[3] or (d),[4] which she argued

---

[2]     *See* CINA Rule 6(b).

[3]     CINA Rule 19.1(b) provides that "[a]t any time in a proceeding, a party who is opposed to [OCS] transferring a child from one placement to another may move the court for a review hearing at which the requesting party must prove by clear and convincing evidence that the transfer would be contrary to the best interests of the child."

[4]     CINA Rule 19.1(d) provides that "[a]t any time in a proceeding, the court may review matters not otherwise covered by [the CINA] rules upon motion of a party or on its own motion."

provides for a review hearing to be held at a party's request, and (2) that the court violated Clementine's due process rights.

The superior court denied Clementine's motion for reconsideration. Clementine appeals.

## III. STANDARD OF REVIEW

"We review a denial of a motion to continue for 'abuse of discretion, determining whether a party has been deprived of a substantial right or seriously prejudiced by the [superior] court's ruling.' "[5] We "consider 'the particular facts and circumstances of each individual case to determine whether the denial was so unreasonable or so prejudicial as to amount to an abuse of discretion.' "[6]

"Whether the trial court's factual findings satisfy the CINA statutes is a question of law."[7] "We exercise our independent judgment when interpreting Alaska's procedural rules, including the CINA rules."[8]

---

[5]     *Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 930 (Alaska 2012) (quoting *Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 1013, 1018 (Alaska 2009)).

[6]     *Rowan B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 361 P.3d 910, 912-13 (Alaska 2015) (quoting *A.A. v. State, Dep't of Family & Youth Servs.*, 982 P.2d 256, 259 (Alaska 1999)).

[7]     *Id*. (citing *Casey K. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 311 P.3d 637, 643 (Alaska 2013)).

[8]     *Alyssa B. v. State, Dep't of Health & Soc. Servs.*, 123 P.3d 646, 648 (Alaska 2005) (footnote omitted) (citing *Airoulofski v. State*, 922 P.2d 889, 892 (Alaska 1996)).

Whether Clementine's due process rights were violated is also a question of law.[9] Questions of law are reviewed de novo, and we will adopt "the rule of law that is most persuasive in light of precedent, reason and policy."[10]

## IV.    DISCUSSION

### A.    The Superior Court Did Not Err By Releasing Jasmine From OCS Custody And Dismissing The Case.

We first determine whether the superior court erred in releasing Jasmine from OCS custody and dismissing the case under the applicable CINA rules and statutes. Clementine takes issue with the fact that the superior court dismissed the case before any further proceedings could occur with regards to the petition. She argues that once OCS filed the petition, CINA Rule 10 required the court to make findings on whether probable cause existed to believe that Jasmine was a child in need of aid. Clementine further asserts that if there was no probable cause, OCS was required to return Jasmine to Clementine and not to another parent.

Under AS 47.10.142(d), "[a]t the first [temporary custody] hearing . . . , regardless of whether a continuance is granted, the court shall make a preliminary determination of whether continued placement in the home of the child's parent . . . would be contrary to the welfare of the child." Magistrate Judge Adams's findings on March 9 fit squarely within this definition of preliminary findings, as they were made within a few hours of OCS taking emergency custody of Jasmine. And Judge Schally left these preliminary findings in place on March 24 to give Jermaine time to speak with counsel and to give Horowitz time to contact Clementine.

---

[9]    *See Philip J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 264 P.3d 842, 846 (Alaska 2011) (citing *Jeff A.C., Jr. v. State*, 117 P.3d 697, 702 (Alaska 2005)).

[10]    *Id.* (quoting *Jeff A.C., Jr.*, 117 P.3d at 702 (citations omitted)).

Although Clementine is correct that Magistrate Judge Adams and Judge Schally made only preliminary probable cause findings, she incorrectly concludes that the court is required to keep Jasmine in OCS custody until it makes a specific determination on the bases for removal listed in the emergency petition. On the contrary, "[t]he [superior] court may dismiss a [CINA] petition at any time based on a finding of good cause consistent with the welfare of the child and the family."[11] In this case, the good cause requirement was satisfied by the agreement of OCS, the guardian ad litem, and the assistant attorney general in charge of the State's case.

As a general rule, the attorney general "possesses the . . . power to make any disposition of the [S]tate's litigation which he [or she] thinks best . . . includ[ing] the initiation, prosecution and disposition of cases."[12] And "[w]hen an agency functions to protect the public in general . . . , the agency normally exercises its discretion in deciding whether formal proceedings should be commenced."[13] In this case, OCS and the Department of Law declined to pursue the emergency petition after they determined that Jasmine would be safe in Jermaine's care.[14] In such a situation, the superior court does

---

[11] CINA Rule 7(g).

[12] *Pub. Def. Agency v. Superior Court, Third Judicial Dist.*, 534 P.2d 947, 950 (Alaska 1975) (first citing *State v. Finch*, 280 P. 910 (Kan. 1929); then citing *United States v. San Jacinto Tin Co.*, 125 U.S. 273, 279 (1888); *Fed. Trade Comm'n v. Claire Furnace Co.*, 274 U.S. 160 (1927); *Smith v. United States*, 375 F.2d 243, 246-47 (5th Cir. 1967); *United States v. Cox*, 342 F.2d 167 (5th Cir. 1965); *Boyne v. Ryan*, 34 P. 707 (Cal. 1893); *Ames v. Attorney Gen.*, 124 N.E.2d 511 (Mass. 1955)) .

[13] *Vick v. Bd. of Elec. Exam'rs*, 626 P.2d 90, 93 (Alaska 1981); *see also In re E.H.*, 742 S.E.2d 844, 852-53 (N.C. App. 2013) (holding that the state may voluntarily dismiss a juvenile petition, analogous to Alaska's petition for adjudication of a child in need of aid, without the consent of the guardian ad litem or the parents).

[14] The superior court also considered Clementine's allegations against

(continued...)

not abuse its discretion by dismissing the CINA case. And because the court may dismiss the petition "at any time," it was not required to make probable cause findings before doing so here.

Because the superior court dismissed the case, it made no final probable cause findings. CINA Rule 10(c)(1) states that if the court does not find probable cause, it "shall order the child returned to the home and dismiss the petition," and a related requirement in AS 47.10.142(e) states that in the absence of a probable cause finding, the court must "order the child returned to the custody of the child's parents or guardian." CINA Rule 10 does not define the word "home," and we read CINA Rule 10 in conjunction with AS 47.10.142(e) so that CINA Rule 10(c)(1), consistent with the statute, requires the court to "order the child returned to the custody of the child's parents or guardian." That is precisely what the superior court did in this case. It found good cause to dismiss the petition, made no probable cause finding as a result, and ordered that Jasmine be released from OCS custody. We conclude that the superior court did not err when it dismissed the petition and ordered Jasmine's release from OCS custody.[15]

### B. The Superior Court Was Not Required To Grant Any Relief Under CINA Rule 19.

Clementine filed an opposition to Jermaine's motion to release custody of Jasmine to him and to dismiss the case against Clementine, arguing that Jasmine should remain in OCS custody because there was a potential that Jasmine might be a child in need of aid based on Jermaine's conduct. In particular, Clementine alleged that Jermaine

---

[14](...continued)
Jermaine and reasonably found no support for "any kind of finding that release to [Jermaine] is inappropriate."

[15]    The final order stated that "it is hereby ordered that [Jasmine] is released from OCS custody and this case be dismissed." The order did not specify that Jasmine was to remain in Jermaine's custody following this dismissal.

abandoned Jasmine under AS 47.10.013, but she stated that she needed time for additional discovery to substantiate her allegations. The superior court treated her opposition as a "petition . . . for an order granting emergency custody of the child to [OCS]" made under CINA Rule 6(b), and denied the request.

Clementine first argues that the superior court should instead have treated her opposition to Jermaine's motion as a petition for review under CINA Rule 19.1(d). She notes that CINA Rule 6(b) governs the commencement of a CINA proceeding and, in this case, the proceeding had already commenced when OCS filed its emergency petition on March 9. CINA Rule 19.1(d), on the other hand, provides that a "court may review matters not otherwise covered by [the CINA] rules upon motion of a party."

We assume that Clementine is correct when she argues that CINA Rule 6(b) does not apply to this situation. However, while CINA Rule 19.1(d) provides for review of anomalous situations, it does not confer any substantive rights.[16] Clementine does not point to any authority under which the State may retain custody of a child if a court has not found probable cause to believe the child is in need of aid, and the CINA rules do not grant Clementine the right to compel OCS to continue to prosecute the case against *her* by bringing allegations against the *other* parent. The superior court granted Clementine all the relief to which she is entitled by dismissing the allegations against her and ordering Jasmine's release from OCS custody. CINA Rule 19.1(d) does not entitle her to further review of a matter already settled in her favor.

---

[16] *Compare* CINA Rule 19.1(d) ("[T]he court may review matters not otherwise covered by these rules upon motion of a party or on its own motion."), *with* CINA Rule 19.1(b) (specifically providing for "a review hearing at which the requesting party must prove by clear and convincing evidence that [a] transfer [of placement] would be contrary to the best interests of the child").

Clementine also argues that CINA Rule 19.1(b) should apply to her opposition. CINA Rule 19.1(b) states that "[a]t any time in a proceeding, a party who is opposed to [OCS] transferring a child from one placement to another may move the court for a review hearing at which the requesting party must prove by clear and convincing evidence that the transfer would be contrary to the best interests of the child."

But OCS did not "transfer[] [Jasmine] from one placement to another"; the court released Jasmine from custody when it dismissed the case. In the CINA rules, relevant statutes, and OCS regulations, "placing" a child is distinguished from releasing a child from OCS custody. For example, CINA Rule 10(c) requires the court to "order the child *placed* in the temporary custody of [OCS] . . . if the court finds probable cause to believe that the child is a child in need of aid," but if no probable cause is found, the court is directed to "order the child *returned* to the home."[17] Interpreting CINA Rule 19.1(b) in the manner urged by Clementine would permit parents to shoehorn matters into a CINA proceeding that are more properly addressed in the context of a private custody dispute. We conclude that CINA Rule 19.1(b) does not grant the parents a right to a custody hearing when the child is released from OCS custody.

### C.     The Issue Of Clementine's Request For A Continuance Is Moot.

Clementine argues that the superior court abused its discretion by refusing to continue the April 2 proceedings. She argues that although CINA Rule 10(a)(1)

---

[17]     CINA Rule 10(c)(1) & (2) (emphases added); *see also* AS 47.14.100(a) ("[OCS] shall arrange for the care of every child committed to its custody by placing the child in a foster home or in the care of an agency or institution . . . ."); 7 Alaska Administrative Code (AAC) 56.990(5) (2015) ( " '[A]rranges or arranging for placement' means planning for a child's care and treatment, selection of a particular foster care, residential care, guardianship, or adoption setting for a child . . . and supervision of a child's care."); *id.* (36) (" '[P]lacement setting' includes a foster home and a residential child care facility licensed under 7 AAC 50 and a home providing guardianship or adoption for a child.").

requires the court to schedule a temporary custody hearing within 48 hours of OCS taking emergency custody of a child, CINA Rule 10(a)(2) permits a court to continue the temporary custody hearing when a parent is not prepared to respond to an emergency petition.[18] Clementine points out that Camozzi had been assigned to her case less than two days before the April 2 hearing, and that we have stated that "[i]t is imperative that counsel be afforded adequate time in which to prepare his [or her] defense, especially when serious charges . . . must be squarely met."[19]

"[W]e will refrain from deciding questions where events have rendered the legal issue moot."[20] CINA Rule 10(a)(2) permits the court to grant a continuance if a parent "is not prepared to respond to the petition." But here, the petition has been dismissed; there are no longer any charges to be met. By dismissing the petition, the court granted all of the relief that it could grant to Clementine with respect to that petition, and there is no longer any live controversy as to whether Clementine engaged in the alleged conduct or whether that conduct caused Jasmine to be a child in need of aid.[21] Accordingly, Clementine was not entitled to any additional time to respond to

---

[18]     CINA Rule 10(a)(2) states that "[t]he court may continue a temporary custody hearing at the request of a parent . . . upon a showing of good cause for why the parent . . . is not prepared to respond to the petition. A continuance must be requested before or at the outset of the hearing."

[19]     *Klockenbrink v. State*, 472 P.2d 958, 965 (Alaska 1970).

[20]     *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1167 (Alaska 2002) (quoting *Gerstein v. Axtell*, 960 P.2d 599, 601 (Alaska 1998)).

[21]     *See id.* ("A claim is moot if it is no longer a present, live controversy, and the party bringing the action would not be entitled to relief, even if it prevails." (citing *Gerstein*, 960 P.2d at 601)).

those allegations. And to the extent that Clementine was requesting a continuance to substantiate her allegations against Jermaine, the court properly denied her request; CINA Rule 10(a)(2) does not grant her a right to a continuance on those grounds.

**D.      The Superior Court Did Not Violate Clementine's Due Process Rights.**

The parties agree that Clementine has a fundamental liberty interest in parenting Jasmine. The United States Supreme Court has held that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they . . . have lost temporary custody of their child to the State."[22] The parties also agree that the State would violate that fundamental liberty interest if it were to remove a child from a parent without due process. Clementine argues that the superior court interfered with her fundamental liberty interest in parenting Jasmine without due process by (1) failing to make probable cause findings with respect to the State's initial allegations against her and (2) releasing Jasmine without an evidentiary hearing on Clementine's allegations against Jermaine.

Clementine's first argument apparently rests on her desire to see OCS's "thus-far unsupported allegations against her . . . laid to rest." But those allegations were laid to rest when the superior court dismissed the case. By doing so, it granted Clementine all the relief to which she would be entitled even if it had made specific and final findings on the allegations in the emergency petition: dismissal of the petition and

---

[22]      *Santosky v. Kramer*, 455 U.S. 745, 753 (1982).

a determination that the State had no right to custody of Jasmine.[23] Clementine's request for specific findings on the allegations made against her was therefore mooted when the superior court dismissed the case.[24]

Moreover, both OCS and the superior court followed the procedures established in the CINA rules and statutes. Under CINA Rule 6(a), OCS may take emergency custody of a child without a court order, provided that it files, "within 24 hours after custody was assumed, a petition alleging that the child is a child in need of aid." OCS followed this protocol, submitting the emergency petition within 24 hours of taking custody of Jasmine.

Next, under AS 47.10.142(d), "[a]t the first [temporary custody] hearing . . . , regardless of whether a continuance is granted, the court shall make a preliminary determination of whether continued placement in the home of the child's parent . . . would be contrary to the welfare of the child." Accordingly, Magistrate Judge Adams made a preliminary determination that there was probable cause to believe that Jasmine was a child in need of aid and that it was not in Jasmine's best interests to allow her to remain with Clementine. Judge Schally left these preliminary findings in place on March 24 to give Jermaine time to speak with his counsel and to give Clementine's attorney time to contact her. Magistrate Judge Adams's and Judge Schally's preliminary findings demonstrate that, contrary to Clementine's assertions, the court did make probable cause findings regarding whether Jasmine was a child in need of aid. Although

---

[23]  *See* CINA Rule 10(c)(1) (if the court does not find probable cause, it "shall order the child returned to the home and dismiss the petition").

[24]  *See Mullins v. Local Boundary Comm'n*, 226 P.3d 1012, 1017 (Alaska 2010) ("A claim is moot . . . 'if the party bringing the action would not be entitled to any relief even if it prevails.' " (quoting *Ulmer v. Alaska Rest. & Beverage Ass'n*, 33 P.3d 773, 776 (Alaska 2001))).

the superior court later found good cause to dismiss the case and did not make final probable cause findings, the dismissal obviated the need for such findings.[25]

Clementine's second argument — that the superior court violated her right to due process by releasing Jasmine from OCS custody without conducting an evidentiary hearing on her allegations against Jermaine — misapprehends the scope of the CINA proceeding and the court's order.  Contrary to her argument, the order which we are reviewing did not "place children with a particular parent" or "make a quick and unreviewable custody decision."  Instead, the superior court determined that as between the State and Jasmine's parents, the parents were entitled to custody and the State was not.  As we reasoned above in Section B, the court was not required to hold an evidentiary hearing on Clementine's allegations against Jermaine before making that decision.

We are mindful of the physical reality that before the State's involvement, Jasmine lived with Clementine, while after the State's involvement, Jasmine lives with Jermaine.  But we review the superior court's decision, not the actions of OCS or Jermaine.  The court made no determination as to which parent should have custody of Jasmine; rather, it properly dismissed a petition that OCS had decided not to pursue, and ordered Jasmine released from OCS custody as required by CINA Rule 10.

We therefore conclude that the superior court did not violate Clementine's right to due process.

## V. CONCLUSION

We AFFIRM the superior court's order releasing Jasmine from OCS's custody and dismissing the case.

---

[25] *See* CINA Rule 7(g) (authorizing the superior court to dismiss the petition "at any time" if it finds good cause to dismiss).

STOWERS, Chief Justice, with whom Maassen, Justice, joins, dissenting.

I dissent from today's opinion because I believe that the superior court moved too quickly through these proceedings. As a result, Clementine never had the opportunity to meaningfully contest the allegations against her, and the superior court released Jasmine to Jermaine without fully considering allegations that he had abandoned Jasmine. By so doing the court erroneously failed to provide Clementine a continuance, failed to conduct a hearing, and violated Clementine's due process rights.

## I. DISCUSSION

### A. The Superior Court Erred By Releasing Jasmine From OCS Custody And Dismissing The Case.

Under the unique circumstances of this case, I would find that Clementine was entitled to final probable cause findings regarding OCS's allegations against her before the superior court released custody to Jermaine and dismissed the case.

The court concludes that the superior court did not make final probable cause findings because Magistrate Judge Adams's and Judge Schally's findings were preliminary probable cause findings[1] and because the superior court dismissed the case.

---

[1] Under AS 47.10.142(d), "[a]t the first hearing under this subsection, regardless of whether a continuance is granted, the court shall make a preliminary determination of whether continued placement in the home of the child's parent or guardian would be contrary to the welfare of the child." The court typically enters these preliminary findings while a parent is waiting to obtain counsel or when the appointed counsel needs further time to prepare. But Alaska Statute 47.10.142(e) describes that "[w]hen the temporary custody hearing is held, the court shall determine whether probable cause exists for believing the child to be a child in need of aid." Alaska Statute 47.10.142(e) refers to final probable cause findings, which are different from preliminary findings. Preliminary probable cause findings are just that — preliminary — and permit the court to essentially continue further proceedings until the parties are ready to participate in the temporary custody hearing where the issue of probable cause is determined. Even then, all that is being determined is probable cause, (continued...)

-17- **7109**

The court then explains:

> CINA Rule 10(c)(1) states that if the court does not find probable cause, it "shall order the child returned to the home and dismiss the petition," and a related requirement in AS 47.10.142(e) states that in the absence of a probable cause finding, the court must "order the child returned to the custody of the child's parents." That is precisely what the superior court did in this case

by releasing Jasmine to Jermaine. I disagree with that conclusion. First, releasing custody to Jermaine effectively removed Jasmine from Clementine's care without adequate, final probable cause findings against Clementine. Final probable cause findings would have determined, as a threshold matter, whether Jasmine should have been removed from Clementine's home in the first place.

Second, even if the superior court had made final probable cause findings supporting the dismissal of the case against Clementine, returning Jasmine to Clementine's home — the only home she has ever known — and "returning" her to the home of a parent who has never acted as her caregiver are drastically different outcomes. I do not believe that AS 47.10.142(e) and CINA Rule 10(c)(1) should be read to bring about an outcome that "returns" Jasmine to a place she has never called home and to a parent who has never served as her caregiver. What actually happened was that the State — that is, both OCS and the court — effected a change in physical custody without giving the formal custodial parent an opportunity to be fully and fairly heard. Therefore, I would hold that Clementine was entitled to final probable cause findings regarding the

---

[1](...continued)
a far different (and lesser) quantum of proof than a formal adjudication that a parent's conduct has made her children in need of aid.

allegations against her; if those final probable cause findings supported the dismissal of the case against Clementine, the superior court should have ordered Jasmine returned to Clementine's home — the same home from which she was removed.

Alaska Statutes 47.05.060 and 47.10.086 support this interpretation. In AS 47.05.060, the legislature states that "[t]he purpose of this [CINA] title as it relates to children is to secure for each child the care and guidance, preferably in the child's own home, that will serve the moral, emotional, mental, and physical welfare of the child and the best interests of the community." The legislature's preference to keep the child in "the child's *own home*" suggests that the term "home" as used in AS 47.10.142(e) and CINA Rule 10(c)(1) is meant to refer to the child's original living situation, rather than a broader definition that includes an absent, previously unengaged parent. And AS 47.10.086 requires that if a child is found to be a child in need of aid, OCS "shall make timely, reasonable efforts to provide family support services to the child and to the parents or guardian of the child that are designed to prevent out-of-home placement of the child or to enable the safe return of the child to the family home." The existence of this provision suggests that the legislature intended CINA rules and statutes to promote, if possible, the reinstatement of the child's original living situation when OCS becomes involved in a child's custody. In other words, OCS must make reasonable efforts to reunite the child with the original custodial parent. Here, OCS made no efforts to reunite Jasmine with Clementine, as the superior court prematurely dismissed the case before any further proceedings could occur with regards to the emergency petition.

For these reasons, I would hold that Clementine was entitled to final probable cause proceedings regarding the allegations against her, and if those final probable cause findings were to support the dismissal of the case against Clementine, the superior court should return Jasmine to Clementine's care. If the probable cause findings supported removal, then OCS should have been required to proceed in the usual fashion

to provide Clementine with a case plan and services aimed at allowing Clementine to remedy her conduct such that she could reunify with her child.

## B. Clementine Was Entitled To An Evidentiary Hearing Regarding Her Allegations Against Jermaine.

The court concludes that even under CINA Rules 19.1(b) or (d) — the CINA rules that Clementine wished to apply to her opposition — Clementine was not entitled to an evidentiary hearing regarding her allegations against Jermaine. Although I would preliminarily hold that the superior court clearly erred in finding that no statement of facts supported Clementine's allegations under CINA Rule 6(b)(2), I also disagree with this court's conclusion that CINA Rule 19.1(b) does not apply to Clementine's opposition.

First, under CINA Rule 6(b)(2), Clementine's opposition "must be supported by a statement of facts sufficient to show that the child is a child in need of aid and is in a condition which requires the immediate assumption of custody." Clementine met her prima facie burden, asking for an evidentiary hearing only to further substantiate the allegations for which she already offered proof. In her opposition to Jermaine's motion, Clementine argued that Jasmine was a child in need of aid as a result of Jermaine's abandonment, and her attorney's affidavit confirmed that he believed this argument had merit. While Jermaine apparently had no criminal or child protective services history in either Minnesota or Alaska and his interactions with Jasmine were preliminarily deemed "totally appropriate [and] caring," there was enough evidence in the opposition and supporting affidavit to substantiate Clementine's assertions that Jermaine abandoned Jasmine under AS 47.10.011(1).[2] Jermaine had not paid child

---

[2]     AS 47.10.011(1) states that the court may find a child to be a child in need of aid if "a parent or guardian has abandoned the child as described in AS 47.10.013, and

(continued...)

support in three years, had never sought a civil custody order or other means to enforce custody, and had extremely limited contact with Jasmine for the first six years of her life. Based on these allegations, supported by an affidavit, Jermaine appears to have "shown a conscious disregard of parental responsibilities toward [Jasmine] by failing to provide reasonable support, maintain regular contact, or provide normal supervision," "has made only minimal efforts to support and communicate with [Jasmine]," and/or has "failed for

---

² (...continued)
the other parent is absent or has committed conduct or created conditions that cause the child to be a child in need of aid under this chapter." The abandonment statute, AS 47.10.013, explains that

> [f]or purposes of this chapter, the court may find abandonment of a child if a parent or guardian has shown a conscious disregard of parental responsibilities toward the child by failing to provide reasonable support, maintain regular contact, or provide normal supervision, considering the child's age and need for care by an adult. Abandonment of a child also includes instances when the parent or guardian, without justifiable cause, (1) left the child with another person without provision for the child's support and without meaningful communication with the child for a period of three months; (2) has made only minimal efforts to support and communicate with the child; (3) failed for a period of at least six months to maintain regular visitation with the child; (4) failed to participate in a suitable plan or program designed to reunite the parent or guardian with the child; (5) left the child without affording means of identifying the child and the child's parent or guardian; (6) was absent from the home for a period of time that created a substantial risk of serious harm to a child left in the home; (7) failed to respond to notice of child protective proceedings; or (8) was unwilling to provide care, support, or supervision for the child.

a period of at least six months to maintain regular visitation with [Jasmine]."[3] Therefore, because Clementine had asserted plausible prima facie allegations supported by an affidavit that Jermaine had abandoned Jasmine, the superior court clearly erred in finding that there was no evidence showing that Jermaine's conduct caused Jasmine to be a child in need of aid. The superior court — analyzing Clementine's opposition under CINA Rule 6(b) — should instead have found that Clementine sufficiently substantiated her allegations of abandonment and, at the very least, should have permitted further discovery and an evidentiary hearing on that issue.

Second, as this court notes, Clementine argues that the superior court should have treated her opposition to Jermaine's motion as a petition for a review hearing under CINA Rule 19.1(b) or (d) rather than CINA Rule 6(b). CINA Rule 19.1(b) states that

> [a]t any time in a proceeding, a party who is opposed to [OCS] transferring a child from one placement to another may move the court for a review hearing at which the requesting party must prove by clear and convincing evidence that the transfer would be contrary to the best interests of the child.

I believe that CINA Rule 19.1(b) applies to Clementine's opposition and would entitle her to a hearing regarding her argument against transferring placement of Jasmine from Clementine to Jermaine.

This court dismisses Clementine's argument that Rule 19.1(b) applies because "OCS did not transfer Jasmine from one placement to another; OCS released Jasmine from custody when the court dismissed the case" and because the term " 'placement' is used to refer to the home of a child who remains in OCS custody." The court therefore concludes that CINA Rule 19.1(b) did not apply to Clementine's

---

[3]     AS 47.10.013(a).

opposition and that Clementine was not entitled to a hearing on her allegations against Jermaine.

But I do not find the court's support for these arguments convincing. The court's argument that OCS did not transfer Jasmine from one placement to another because OCS released Jasmine from custody and dismissed the case is contrary to any reasonable common sense understanding of what actually happened and raises form over substance. OCS cooperated with Jermaine to effectuate a change in Jasmine's living situation, moving her from Clementine's care and physical custody to Jermaine's physical custody. Therefore, OCS in effect transferred Jasmine from one custodial placement with Clementine to another with Jermaine, and the superior court should therefore have analyzed Clementine's opposition under CINA Rule 19.1(b).

With regard to the term "placement," and contrary to this court's explanation, the phrase is not always "used to refer to the home of a child who remains in OCS custody." For instance, other CINA rules refer to adoptive or other permanent living arrangements as "placements," and, in these instances, a child does not remain in OCS custody after such placements.[4] In *A.B. v. State, Department of Health & Social Services*, we noted that AS 47.10.088(a) "provides that a court may terminate parental rights 'for the purposes of freeing a child for adoption or other permanent placement,' " and we remanded the case for the superior court to explain whether termination of the mother's rights was appropriate given the State's efforts to unite the child with her

---

[4]        *See, e.g.*, CINA Rule 17.2(e) (requiring courts to make written findings after a permanency hearing on "whether the child should be *placed* for adoption or legal guardianship" or "whether there is compelling reason that the most appropriate *placement* for the child is in another planned, permanent living arrangement" (emphasis added)).

biological father.[5]  In so doing we noted that "[p]lacement with a non-terminated parent could be an 'other permanent placement' under AS 47.10.088(a), and, under AS 47.10.088(h), terminating the non-custodial parent's rights would not affect the rights of the custodial parent.  But the termination must be made 'for purposes of freeing' a child for such permanent placement."[6]  We reiterated this point in a later unpublished memorandum opinion.[7]  In other cases we have used "placement" to refer to returning the child to a biological parent.[8]  There is no compelling reason to support the court's favored reading of the term "placement"; to conclude that OCS did not effect a change in placement of the child ignores any common sense understanding of the term.  Again, I would construe the rule to permit Clementine to have a hearing at which she might discover or adduce further evidence that Jasmine's physical placement with Jermaine is contrary to Jasmine's best interests.

---

[5]  7 P.3d 946, 954-55 (Alaska 2000).

[6]  *Id.* at 954 n.24.

[7]  *Victor B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 2011 WL 6004329, at *7 (Alaska 2011) ("We have stated that '[p]lacement with a non-terminated parent could be an "other permanent placement" under AS 47.10.088(a).' " (alteration in original) (quoting *A.B.*, 7 P.3d at 954 n.24)).

[8]  *See J.S. v. State*, 50 P.3d 388, 395 (Alaska 2002) ("The superior court's finding beyond a reasonable doubt that placement with [the father] would result in serious emotional damage to the boys was therefore not clearly erroneous."); *Denise L. v. State, Dep't of Health & Social Servs., Office of Children's Servs.*, 2014 WL 1168868, at *2, *4 (Alaska 2014) (explaining that "[i]n April 2013, at the request of OCS, the trial court released Isis from OCS custody and placed her with her father" and that "[t]he trial court found that continued placement in [the mother's] home would be contrary to the welfare of the children 'based on the history of [the] whole case' " (first and third alterations in original)).

**C.    The Superior Court Violated Clementine's Due Process Rights.**

I would also hold that the superior court violated Clementine's fundamental liberty interest in parenting Jasmine without due process by dismissing the proceedings against Clementine without allowing her to meaningfully address OCS's emergency petition and by releasing Jasmine to Jermaine without allowing Clementine to participate in an evidentiary hearing to determine whether Jasmine is a child in need of aid with respect to both her conduct and Jermaine's conduct. Clementine had a reasonable expectation that she would be able to address OCS's concerns about her conduct and to present evidence to the court regarding Jermaine's conduct. Instead, the superior court never completed OCS's proceedings against her, and it ignored her plausible prima facie allegations, supported by Camozzi's affidavit, that Jermaine abandoned Jasmine.

OCS's decision to dismiss the case affected Clementine's rights to raise Jasmine free from state interference and to meaningfully be heard regarding both OCS's allegations against her and her allegations against Jermaine. Contrary to this court's conclusion, the superior court's premature dismissal of the case did not "grant[] Clementine all the relief to which she would be entitled even if [the superior court] had made specific and final findings on the allegations in the emergency petition." The superior court's dismissal and release of custody to Jermaine radically altered the status quo by changing the family's physical custody arrangements; Jasmine was sent to live with Jermaine in Minnesota rather than continuing to live with Clementine in Alaska.

## II.    CONCLUSION

For the reasons detailed above, I dissent from this court's affirmance of the dismissal of the CINA case.