NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

REMY K., )
)  Supreme Court No. S-16277
Appellant, )
)  Superior Court No. 3AN-13-00015/16 CN
v. )
)  MEMORANDUM OPINION
STATE OF ALASKA, )  AND JUDGMENT*
DEPARTMENT OF HEALTH & )
SOCIAL SERVICES, OFFICE OF )  No. 1609 – January 18, 2017
CHILDREN'S SERVICES, )
)
Appellee. )
)

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Sharon Barr, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Kathryn R. Vogel, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee. Rebecca L. Karstetter, Rebecca L. Karstetter, LLC, Anchorage, Guardian ad Litem.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Carney, Justice, not participating.]

_____

\*  Entered under Alaska Appellate Rule 214.

## I.    INTRODUCTION

The superior court terminated a father's parental rights following a trial that took place while he was incarcerated but just days before he was due to be released from custody.  He appeals the superior court's denial of his motion to continue the trial until after his release, arguing that he should have been given more time to work on his sobriety and other issues.  He also argues that termination of his parental rights was not in the children's best interests.  Because denying a continuance was not an abuse of discretion and the findings on termination are well supported by the record, we affirm the superior court's decision.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Remy K. is the father of a son, Hayden, born in 2006, and a daughter, Daisy, born in 2008.[1]  The children were exposed to illicit drug use from a young age. Hayden was hospitalized when he was about 18 months old after overdosing on cocaine and oxycodone in the presence of both parents.  Later that year the Office of Children's Services (OCS) received a report that Remy was cooking and selling methamphetamine out of his home while the children were there.

Remy also spent years removed from the children's lives while incarcerated on domestic violence and drug charges.  For approximately three years, from 2010 to 2013, Remy was serving time in Colorado and lost contact with the children completely. He nonetheless made some progress while in prison, participating in substance abuse treatment, faith-based counseling, and other educational and rehabilitative programs.

---

[1]    Pseudonyms are used for family members to protect their privacy.  The children are Indian children for the purposes of the Indian Child Welfare Act (ICWA) of 1978.  25 U.S.C. § 1903(4) (2012).

OCS took custody of Hayden and Daisy in January 2013, while Remy was still in prison, and placed them in foster care. Once Remy was released to a halfway house in Anchorage, OCS arranged transportation so that he could visit the children. He also attended parenting classes and participated in Hayden's therapy sessions.

Remy left the halfway house in March 2014 and continued to make progress on his case plan. He was allowed unsupervised visits with his children, but trial home visits were not an option, as his residence lacked water, gas, and a stove. An OCS case worker helped him try to find safer housing, but without success.

In late November or early December 2014 Remy relapsed on alcohol, heroin, and methamphetamine. He admitted his relapse and asked OCS for help. His case worker helped him schedule a substance abuse assessment, but he failed to attend. Over the next two months he continued using drugs and during this same period had a violent altercation with Hayden and Daisy's mother.

Remy was arrested in February 2015 on a new drug charge and later convicted. While he was serving time on that conviction, OCS filed a petition to terminate his parental rights.

At the time of the termination trial Daisy was in a pre-adoptive placement, where she was doing well. She told an OCS worker that she wanted to stay there and did not want to live with her father. Hayden was more strongly bonded to Remy; he recognized Remy as his father, "was eager for . . . a visit with his dad," and had expressed a desire to live with him. Hayden's temporary placement, a foster family, was interested in guardianship but not adoption, but they were willing to consider being a permanent placement if Hayden could not reunify with his parents.

B.    **Proceedings**

Although OCS took custody of Hayden and Daisy in January 2013, it delayed seeking termination. Because of Remy's progress on his case plan once he got

out of prison, OCS filed a notice with the court in July 2014 that there was a "compelling reason" to postpone filing the petition to terminate his parental rights. But a year later OCS did file its petition, and a termination trial was scheduled for early November 2015.

In October Remy moved to continue the trial, pointing out that he was still in prison but hoped to move to a halfway house soon, where he could "continue working on his goal of reunification." The court denied the motion, and trial took place in November as scheduled.

The superior court put a decision on the record in February 2016. The court found that Hayden and Daisy were children in need of aid under AS 47.10.011 due to abandonment, incarceration, neglect, and substance abuse;[2] that Remy had not remedied, within a reasonable time, the conduct or conditions that put his children at substantial risk of harm; that returning the children to Remy's care would therefore put them at substantial risk of physical or mental injury; that OCS had made active but unsuccessful efforts to reunify the family; and that terminating Remy's parental rights was in the children's best interests.

Remy appeals.

## III.   STANDARDS OF REVIEW

The denial of a motion to continue a termination trial is reviewed for "abuse of discretion, determining whether a party has been deprived of a substantial right or seriously prejudiced by the superior court's ruling."[3] We consider "the particular facts

---

[2]     *See* AS 47.10.011(1), (2), (9), (10).

[3]     *Clementine F. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 375 P.3d 39, 43 (Alaska 2016) (alterations omitted) (quoting *Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 930 (Alaska 2012)).

and circumstances of each individual case to determine whether the denial was so unreasonable or so prejudicial as to amount to an abuse of discretion."[4]

We review the superior court's factual findings, including best interest findings, for clear error.[5] Factual "[f]indings are clearly erroneous if review of the entire record leaves us with a 'definite and firm conviction that a mistake has been made.' "[6]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion When It Denied Remy's Motion To Continue The Termination Trial.

Remy first argues that the superior court abused its discretion by denying his motion to continue the termination trial. Under AS 47.10.088(j), the termination trial must occur within six months after the petition is filed, but the court may continue trial on a showing of good cause, "tak[ing] into consideration the age of the child[ren] and the potential adverse effect that the delay may have on the child[ren]." The court must balance the parent's interest in continuing the trial against the children's interest in permanency.[7] We will find an abuse of discretion only if denial of the continuance "deprived [the parent] of a substantial right" or "seriously prejudiced" the parent.[8]

---

[4] *Id.* (quoting *Rowan B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 361 P.3d 910, 912-13 (Alaska 2015)).

[5] *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 427-28 (Alaska 2012) (citing *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1104 (Alaska 2011)).

[6] *Id.* (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)).

[7] *See Hannah B.*, 289 P.3d at 931-32.

[8] *Id.* at 931 (quoting *Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 1013, 1019 (Alaska 2009)).

OCS filed its termination petition on May 1, 2015, while Remy was incarcerated following his relapse. The court set trial for November of that year, and Remy filed his motion to continue in October. He explained that he "expect[ed] to be moved to a halfway house on or before November 3, 2015," then planned to arrange a "transfer to a treatment facility." He asserted that a "short delay" of the trial would allow him to "continue working on his goal of reunification." He also asserted that continuing the trial past the date of his release would enable him "to attend trial without the expense associated with prison transport." The State opposed Remy's motion, and the superior court denied it without comment.

Remy argues that the denial of his motion "seriously prejudiced" him because he lost the chance to show that, upon his release from prison, "he could go through substance abuse treatment and maintain his sobriety." "Continuing the trial for several months," he argues, "would have given him adequate time to go through substance abuse treatment . . . and do what was necessary to regain custody of his children."

But it is not apparent that a "short delay" of even "several months" would have given Remy enough time to accomplish what he hoped to accomplish: complete treatment and remain sober long enough to satisfy concerns that he would again relapse. Given the significant risk that parental substance abuse poses to children, we have upheld terminations when parents have demonstrated longer periods of sobriety than Remy hoped to demonstrate here.[9] We affirmed the denial of a continuance in *Hannah B.*, in

---

[9] *See Barbara P.*, 234 P.3d at 1260 (upholding termination where mother had completed treatment and maintained six months of sobriety); *Sherry R. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 74 P.3d 896, 902-03 (Alaska 2003) (upholding termination where the mother had completed treatment and maintained one year of sobriety).

which the mother sought a three-month continuance to engage in substance abuse treatment; we concluded that "a continuance of a few months would not have addressed the court's concerns regarding the likelihood that [the mother] would relapse."[10] Like the mother in *Hannah B.*, Remy had a significant history of drug use involving risk of harm and actual harm to his children.[11] Furthermore, he had already relapsed once, with serious consequences to the family, even after having completed substance abuse treatment.

The superior court in this case could also have reasonably concluded that the "short delay" Remy requested would not have been sufficient to allay OCS's other concerns: his history of domestic violence, his inability to find safe housing even when sober and mostly compliant with his case plan, and his ability to care for a "special needs" child like Hayden. We are not persuaded that a delay of even "several months" would have made a difference to the superior court's ultimate findings. We therefore cannot conclude that Remy was "seriously prejudiced" by the denial of a continuance.

Furthermore, Hayden and Daisy's interest in permanency was a necessary consideration.[12] Daisy, who was seven years old at the time of trial, was in a pre-adoptive home; termination of Remy's parental rights would allow her to go forward with adoption. Hayden, who was nine, was not in a pre-adoptive placement, but, as OCS noted in its opposition to Remy's motion for a continuance, he "may not enjoy an adoptive home until parental rights are terminated. Any continuance would merely force

---

[10]    289 P.3d at 932.

[11]    *Id.* at 931-32.

[12]    AS 47.10.088(j) (requiring a superior court to "take into consideration the age of the child and the potential adverse effect that the delay may have on the child" in determining whether to grant a continuance for good cause); CINA Rule 18(e).

the child to linger in foster care." We have repeatedly held that "[t]he best interests of children, including the interest in permanency as opposed to leaving children in limbo, are paramount."[13]

We conclude that the superior court did not abuse its discretion by denying Remy's motion to continue trial.

**B.     The Superior Court Did Not Clearly Err In Its Conclusion That Termination Of Remy's Parental Rights Was In The Children's Best Interests.**

Remy also argues that the superior court erred when it concluded that terminating his parental rights was in Hayden and Daisy's best interests. A best interests determination implicates a host of factors the superior court may consider, including: "the likelihood of returning the [children] to the parent within a reasonable time based on the [children's] age or needs";[14] "the likelihood that the harmful conduct will continue";[15] "the history of conduct by or conditions created by the parent";[16] "the presence or lack of favorable present placements";[17] "the bonding that has occurred

---

[13]     *Rowan B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 361 P.3d 910, 914 (Alaska 2015).

[14]     AS 47.10.088(b)(1).

[15]     AS 47.10.088(b)(4).

[16]     AS 47.10.088(b)(5).

[17]     *Casey K. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 311 P.3d 637, 647 (Alaska 2013) (citing *Sean B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 251 P.3d 330, 339 (Alaska 2011)).

between the [children] and [their] foster parents[;] the need for permanency[;] and the offending parent's lack of progress."[18]

Remy's history of substance abuse and crime was a significant factor in this case. The superior court noted that during the 33 months of OCS's involvement with his children, Remy himself was out of State custody for less than a year, and during that time he "continued to use heroin and methamphetamine as well as alcohol . . . [and] committed a domestic violence assault on the mother." Following his relapse in December 2015, Remy failed to follow through on a drug assessment or substance abuse treatment despite OCS's active efforts. We have observed that "[p]ast addictive behavior and associated parenting failures may be predictive of similar conduct in the future."[19] Here, the superior court's finding "that it is likely that the father's [problematic] conduct will continue and very unlikely that the children could be reunited with him within a reasonable period of time" has substantial support in the record and is not clearly erroneous.

It is also significant that neither Daisy nor Hayden had lived with Remy in more than seven years, and it was unlikely that they would be able to do so within a reasonable period of time. If Remy was released from prison to a halfway house around the time of trial, as he expected, he then would have to be released from the halfway

---

[18]     *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1271 (Alaska 2014) (first citing *Emma D. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 322 P.3d 842, 853 (Alaska 2014) and *Amy M. v. State, Dep't of Health & Soc. Servs.*, 320 P.3d 253, 261 (Alaska 2013); then citing *Thea G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 291 P.3d 957, 968 (Alaska 2013); and then citing *Phoebe S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-15112, 2014 WL 1691614, at *7 (Alaska Apr. 23, 2014)).

[19]     *J.J. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 38 P.3d 7, 11 (Alaska 2001).

house, complete treatment, demonstrate long-term sobriety, and secure safe housing before OCS could contemplate reunification. But "a child's need for permanence and stability should not be put on hold indefinitely while the child's parents seek to rectify the circumstances that cause their children to be in need of aid."[20]

Finally, as already discussed above, the superior court found that Hayden and Daisy "were doing well" in their current placements and that continuing to attempt reunification with Remy would seriously delay permanency. The court aptly explained that "[n]ot knowing where they will be . . . is very unsettling to the children and detrimental, and permanency at this point in time is required." The record supports these findings. We therefore affirm the superior court's decision that terminating Remy's parental rights was in the best interests of his children.

## V. CONCLUSION

We AFFIRM the superior court's denial of Remy's motion to continue the termination trial and its order terminating Remy's parental rights.

---

[20] *Kent V. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 233 P.3d 597, 603 (Alaska 2010) (citing *J.H. v. State, Dep't of Health & Soc. Servs.*, 30 P.3d 79, 87 (Alaska 2001)).